**EXHIBIT "1"**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

STEVE HICKMAN,                          :
                                        :
    Plaintiff,                          :       CONSOLIDATED
                                        :       Civil Action No. 05-811-KAJ
    v.                                  :       Civil Action No. 05-839-KAJ
                                        :
DETECTIVE MARZEC, in his                :
individual and official capacity,       :
DAVID HUME IV, TOWN OF                  :
DELMAR, DEPARTMENT                      :
OF DRUG ENFORCEMENT,                    :
and AGENT TOM JACOBS,                   :
                                        :
    Defendants.                         :

## OPENING BRIEF IN SUPPORT OF DEFENDANTS MARZEC'S AND JACOBS'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

COLM F. CONNOLLY
United States Attorney

By: Seth M. Beausang (I.D. No. #4071)
    Assistant United States Attorney
    1007 N. Orange Street, Suite 700
    Wilmington, Delaware 19801
    (302) 573-6277

Dated: March 31, 2006.

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

NATURE AND STAGE OF THE PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.    THE COMPLAINTS SHOULD BE DISMISSED
      FOR FAILURE TO STATE A CLAIM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A.    Standard Of Review; Qualified Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            1.    Motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . 8

            2.    Qualified immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      B.    The Complaints Make Clear That
            Marzec And Jacobs Are Entitled To Qualified
            Immunity From Plaintiff's *Bivens* Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            1.    Plaintiff's allegation that Marzec and Jacobs
                  used an illegal search warrant does not state a claim . . . . . . . . . . . . . . . 10

            2.    Plaintiff's allegation that Marzec and Jacobs
                  deprived him of due process when they turned
                  the property over to the DEA does not state a claim . . . . . . . . . . . . . . . 13

      C.    Plaintiff's Allegation That It Was Somehow
            Improper For Marzec And Jacobs To Turn The
            Property Over To The DEA Does Not State A Claim . . . . . . . . . . . . . . . . . . . . . 14

II.   DEFENDANTS MARZEC AND JACOBS ARE
      ENTITLED TO SUMMARY JUDGMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      A.    Standard Of Review Of A Fed. R. Civ. P. 56 Motion.. . . . . . . . . . . . . . . . . . . . . 15

B.   Marzec And Jacobs Are Entitled To Qualified
     Immunity Because They Reasonably Relied In
     Good Faith On The Validity Of The Search Warrant... ..................... 15

C.   Marzec And Jacobs Seized Plaintiff's Property
     On Behalf Of The DEA; They Did Not Turn
     Plaintiff's Property Over To The DEA ............................... 17

CONCLUSION ......................................................... 18

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

*Arizona v. Evans,*
    514 U.S. 1 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics,*
    403 U.S. 388 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 13

*Bye v. United States,*
    105 F.3d 856 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

*Calero-Toledo v. Pearson Yacht Leasing Co.,*
    416 U.S. 663 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Chinchello v. Fenton,*
    805 F.2d 126 (3d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Cole v. Sharp,*
    898 F. Supp. 799 (D. Kan. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Couden v. Duffey,*
    305 F. Supp. 2d 379 (D. Del. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*DiLorenzo v. Edgar,*
    C.A. No. 03-841-SLR, 2004 WL 609374 (D. Del. Mar. 24, 2004) . . . . . . . . . . . . . . . 13

*Doe v. Delie,*
    257 F.3d 309 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Groh v. Ramirez,*
    540 U.S. 551 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Heine v. Rice,*
    No. 8:00CV2297T24TBM, 2001 WL 1338780 (M.D. Fla. Apr. 9, 2001) . . . . . . . . . . 8-9

*In re Burlington Coat Factory Sec. Litig.,*
    114 F.3d 1410 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Merck & Co. Sec. Litig.,*
    432 F.3d 261 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Tower Air, Inc.,*
    416 F.3d 229 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Leveto v. Lapina,*
    258 F.3d 156 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Lyons v. Robinson,*
    783 F.2d 737 (8th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

*McLaughlin v. Watson,*
    271 F.3d 566 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9

*Mitchell v. Forsyth,*
    472 U.S. 511 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Morse v. Lower Merion Sch. Dist.,*
    132 F.3d 902 (3d Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Oran v. Stafford,*
    226 F.3d 275 (3d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Siegert v. Gilley,*
    500 U.S. 226 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Steele v. United States,*
    267 U.S. 498 (1925) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*St. Surin v. Virgin Islands Daily News, Inc.,*
    21 F.3d 1309 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Avarello,*
    592 F.2d 1339 (5th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

*United States v. Bedford,*
    519 F.2d 650 (3d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Clement,*
    747 F.2d 460 (8th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Durk,*
    149 F.3d 464 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

*United States v. Gitcho,*
    601 F.2d 372 (8th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Leon,*
    468 U.S. 897 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 16

*United States v. Ten Thousand Seven Hundred Dollars*
*and No Cents in United States Currency,*
    258 F.3d 215 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Trenary,*
    473 F.2d 680 (9th Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8, 15

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed. R. Civ. P. 56(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18 U.S.C. § 981(a)(1)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 14

18 U.S.C. § 1956(c)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 14

## NATURE AND STAGE OF THE PROCEEDINGS

On November 25, 2005, Plaintiff Steve Hickman, appearing pro se and requesting in forma pauperis status, filed Civil Action No. 05-811 alleging, among other things, that on September 21, 2005, Detective Marzec and "several Police Officers" arrested Plaintiff on drug charges and that Marzec "used a invalid search warrant to search and seize" $12,900 in cash, a 1999 Dodge Durango, "numerous receipts and records" and a cell phone. (C.A. No. 05-811 Compl. at 3.) That complaint also names as a defendant David Hume, who allegedly prosecuted Plaintiff, and the Town of Delmar, which allegedly failed to properly train and supervise its police officers. (*Id.*) Civil Action No. 05-811 seeks a declaration that the search and seizure was unconstitutional, an injunction preventing further unlawful acts and punitive damages in the amount of $250,000 per each named defendant. (*Id.* at 3-4.)

On January 5, 2006, Plaintiff, again appearing pro se and requesting in forma pauperis status, filed an amended complaint in Civil Action No. 05-839, again alleging that an illegal search and seizure took place on September 21, 2005. (C.A. No. 05-839 Compl. at 3.) Civil Action No. 05-839 identifies the other two police officers involved in that search as Agents Tom Jacobs and Chris Quaglino. (*Id.*) The Drug Enforcement Administration ("DEA") and Jacobs were named defendants in the first complaint filed in Civil Action No. 05-839, but are not named in the amended complaint; Quaglino is not a named defendant in any of the actions. Civil Action No. 05-839 makes the additional allegation that Marzec, Jacobs and Quaglino improperly turned the property they seized from Plaintiff over to the DEA, which purportedly had "no legal or practical purpose" to "receive or hold" the property because the DEA was not prosecuting Plaintiff. (*Id.*) Civil Action No. 05-839 also names as defendants Hume and the Town of Delmar, raising allegations identical to those raised before. This time, however, Plaintiff seeks

declaratory and injunctive relief, punitive damages in the amount of $500,000 per defendant, and the immediate return of his property.

The Court consolidated Civil Action Nos. 05-811 and 05-839 on February 1, 2006. (C.A. No. 05-811, Doc. No. 4.) The Court also issued a Memorandum Order on that date in which the Court dismissed several of Plaintiff's claims as frivolous pursuant to 42 U.S.C. § 1915. (C.A. No. 05-811, Doc. No. 5.) First, the Court dismissed Plaintiff's claims against the DEA because those claims are barred by sovereign immunity. (*Id.* at 3.) Next, the Court dismissed the claims against Hume because those claims are barred by prosecutorial immunity. (*Id.* at 3-4.) The Court also denied a petition filed by Plaintiff and non-party Tawanda Weatherspoon for the return of Plaintiff's property because Plaintiff's remedy to contest the forfeited property was not through a *Bivens* or § 1983 case – instead, Plaintiff has to first file a claim in the administrative forfeiture proceeding at which time the matter is forwarded to the United States Attorney for commencement of judicial proceedings. (*See id.* at 5-6 (citing *Longenette v. Krusing*, 322 F.3d 758, 760-61 (3d Cir. 2003)).)

Accordingly, the only claims that remain are the claims against Marzec, Jacobs and the Town of Delmar for the alleged improper search and seizure of Plaintiff's property, and the alleged improper transfer of that property to the DEA. This is the Opening Brief In Support Of Defendants Marzec's And Jacobs's Motion To Dismiss Or, In The Alternative, For Summary Judgment. As explained below, all of Plaintiff's claims against Marzec and Jacobs should be dismissed.

## SUMMARY OF THE ARGUMENT

1.      Plaintiff appears to be alleging that federal agents Marzec and Jacobs violated his

Fourth Amendment rights when they searched his residence and seized his property.

Accordingly, Plaintiff's claims should be construed as *Bivens* claims.  *See Bivens v. Six Unknown*

*Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  However, federal officers are entitled

to qualified immunity from *Bivens* claims unless there was "sufficient precedent at the time of

action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her

conduct is constitutionally prohibited."  *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir.

2001).  Here, no precedent existed that would have put the defendants on notice that a search

warrant that states the correct street address for the residence to be searched, and describes what

that residence looks like, is nevertheless invalid merely because it states the wrong town for the

residence.  Precedent demonstrates just the opposite – a search warrant like the one used in this

case is not invalid.  Accordingly, even if the search warrant was mistaken about the town where

Plaintiff's residence was located, Marzec and Jacobs are entitled to qualified immunity and

Plaintiff's complaints should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

2.      Plaintiff's other claim is that Marzec and Jacobs are somehow liable because they

turned the property they seized from Plaintiff over to the DEA, which purportedly had "no legal

or practical purpose" to "receive or hold" the property.  It is not clear what theory Plaintiff is

pursuing with this claim.  He could be raising another *Bivens* claim, namely, that Marzec and

Jacobs deprived him of his property without due process of law.  Or, Plaintiff could be claiming

that Marzec and Jacobs violated some unstated federal or state law when they turned the property

over to the DEA.  Either way, Plaintiff's claim should be dismissed.

3.      To the extent Plaintiff is claiming that Marzec and Jacobs deprived him of his

property without due process of law, that claim is foreclosed by the United States Supreme Court's decision in *Calero-Toledo v. Pearson Yacht Leasing Co.*, which held that the federal government could seize personal property for purposes of forfeiture without providing a pre-seizure notice and hearing. 416 U.S. 663, 677 (1974).

4.      To the extent Plaintiff is claiming that Marzec and Jacobs violated some unstated federal or state law when they turned Plaintiff's property over to the DEA, that claim should also be dismissed for failure to state a claim. Plaintiff appears to be alleging that it was somehow improper to turn the property over to the DEA because the DEA was not prosecuting Plaintiff. However, federal law allows the federal government to forfeit property that is the proceeds of criminal activity, including drug distribution. *See* 21 U.S.C. § 881. A forfeiture action is a civil action that does not require a federal (or any) criminal prosecution. Accordingly, it was proper for Marzec and Jacobs to turn Plaintiff's property over to the DEA.

5.      Even if Plaintiff's Complaints are not dismissed for failure to state a claim, the United States is entitled to summary judgment of Plaintiff's claims. First, even if the search warrant was invalid – which it was not – Marzec and Jacobs are still entitled to qualified immunity because, as demonstrated in the attached declaration of Marzec, it was objectively reasonable for Marzec and Jacobs to rely on the validity of the warrant. *See United States v. Leon*, 468 U.S. 897, 922 (1984).

6.      Second, Plaintiff's claim that it was improper for Marzec and Jacobs to turn Plaintiff's property over to the DEA must fail because, as demonstrated in the attached declarations, Marzec and Jacobs were working for the DEA at the time and, accordingly, seized Plaintiff's property on behalf of the DEA. In other words, Marzec and Jacobs did not turn Plaintiff's property over to the DEA – the property was in the DEA's possession the whole time.

## STATEMENT OF FACTS[1]

Plaintiff claims that on September 21, 2005, Detective Ronald Marzec and Agents Tom

Jacobs and Chris Quaglino arrested Plaintiff on drug charges and that Marzec "used a invalid

search warrant to search and seize" from Plaintiff's residence $12,900 in cash, a 1999 Dodge

Durango, "numerous receipts and records" and a cell phone. (C.A. No. 05-811 Compl. at 3; C.A.

No. 05-839 Compl. at 3.) The *only fault* that Plaintiff finds with the search warrant is that it

mistakenly stated that Plaintiff's residence was in Ellendale, Delaware; Plaintiff claims his is in

the neighboring town of Lincoln, Delaware. (C.A. No. 05-811 Compl. at 3; C.A. No. 05-839

Compl. at 3.)

Plaintiff does not allege that the search warrant otherwise failed to provide a

particularized description of his residence, despite the mistaken town. Nor could Plaintiff make

such an allegation. The search warrant correctly identified Plaintiff's address as "9008 Greentop

Road" in "Sussex County, Delaware" – the same county where both Lincoln and Ellendale are

located. (Ex. B. at 1.) The search warrant described the place to be searched as "a trailer located

on the West side of Greentop Road. The trailer is beige/tan with white trim, a white foundation,

white front door with the numbers '9008' to the right side of the door." (*Id.*) Plaintiff does not

claim that any of that information is wrong. Nor does Plaintiff point to a second residence in

either Ellendale or Lincoln with the address 9008 Greentop Road that might be confused with

Plaintiff's residence.

Plaintiff also claims that Marzec, Jacobs and Quaglino improperly turned Plaintiff's

---

[1]The Statement of Facts is drawn entirely from Plaintiff's Complaints, documents incorporated therein and documents that can be judicially noticed. Additional facts that are relevant to Marzec's and Jacobs's alternative motion for summary judgment are found in the appropriate parts of the Argument section. The allegations in Plaintiff's Complaints are assumed to be true only for the purpose of this motion.

property over to the DEA, which allegedly had "no legal or practical purpose . . . to receive or hold" that property. (C.A. No. 05-839 Compl. at 3.) According to Plaintiff, it was improper to turn his property over to the DEA because he was not being prosecuted by the DEA. (*Id.*) As explained below, however, all of Plaintiff's claims should be dismissed for failure to state a claim. In the alternative, Marzec and Jacobs are entitled to summary judgment of Plaintiff's claims.

McLean's [search warrant] affidavits, this Court will consider the affidavits as part of the pleadings, and Defendants' Motion to Dismiss will not be converted to a Motion for Summary Judgment.").

### 2.    Qualified immunity.

Qualified immunity protects law enforcement officers from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "One of the purposes of [qualified] immunity – is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." *Siegert v. Gilley*, 500 U.S. 226, 237 (1991). Qualified immunity "is an *immunity from suit* rather than a mere defense to liability; and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, "until this threshold immunity question is resolved, discovery [by the plaintiff] should not be allowed." *Harlow*, 457 U.S. at 818.

"In order to defeat an assertion of qualified immunity, a plaintiff must allege that the official violated a clearly established right." *McLaughlin*, 271 F.3d at 570-71 (quotations omitted). Thus, a police officer is entitled to qualified immunity unless there was "sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." *Id.* at 572. Relevant precedent includes caselaw from the Supreme Court, circuit courts and district courts. *See Doe v. Delie*, 257 F.3d 309, 321 n.10 (3d Cir. 2001). As explained below, the Complaints fail to allege that Marzec and Jacobs violated Plaintiff's clearly established rights. Accordingly, the Complaints should be dismissed.

**B.    The Complaints Make Clear That Marzec And Jacobs Are Entitled To Qualified Immunity From Plaintiff's *Bivens* Claims.**

**1.    Plaintiff's allegation that Marzec and Jacobs used an illegal search warrant does not state a claim.**

Plaintiff's first claim is that Marzec and Jacobs used an illegal search warrant when they searched his residence and seized his property. Of course, Plaintiff's conclusory allegation that the search warrant was illegal is not enough to save the Complaints from a motion to dismiss. Plaintiff must allege some "supporting facts." *In re Tower Air, Inc.*, 416 F.3d 229, 237 (3d Cir. 2005). The only factual allegation that Plaintiff makes concerning the search warrant, however, is that the search warrant was mistaken when it stated that Plaintiff's house was in Ellendale, Delaware. According to Plaintiff, his house is in the neighboring town of Lincoln, Delaware.[2] Even if the search warrant stated the wrong town, however, the search warrant was still valid.

A search warrant provides a sufficient description of the place to be searched for purposes of the Fourth Amendment if the "description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503 (1925); *see also United States v. Bedford*, 519 F.2d 650, 655 (3d Cir. 1975) (same). "The standard . . . is one of practical accuracy rather than technical nicety." *Bedford*, 519 F.2d at 655 (quotations omitted). "Courts routinely have upheld warrants . . . 'where one part of the description of the premises to be searched is inaccurate, but the description has other parts which identify the place with particularity.'" *United States v. Durk*, 149 F.3d 464, 466 (6th Cir. 1998) (quoting *United States v. Gitcho*, 601 F.2d 372, 371 (8th Cir. 1979)).

---

[2]On a motion to dismiss, the Court can take judicial notice that Lincoln and Ellendale are neighboring towns in Sussex County, Delaware. *See, e.g., In re Merck & Co. Sec. Litig.*, 432 F.3d 261, 264 n.3 (3d Cir. 2005); *United States v. Trenary*, 473 F.2d 680, 682 (9th Cir. 1973) (taking judicial notice of maps of Southern California and Mexico).

Thus, a search warrant that makes a minor error in the address of the place to be searched – such as the warrant at issue here – will still be valid so long as an officer can ascertain and identify the place to be searched with reasonable effort. *See, e.g., Durk*, 149 F.3d at 465-66 (holding that a search warrant for "4612 Fulton" Street was valid even though the Defendant's residence was "4216 Fulton" Street because the warrant correctly identified the Defendant's house as a "single-family red brick ranch home" with other unusual features); *Lyons v. Robinson*, 783 F.2d 737, 738 (8th Cir. 1986) (holding that a search warrant for "325 Atkinson Street" was valid even though the Defendants address was "325 Short Street," because the Defendant's residence was a corner lot where Atkinson and Short Streets intersect and the officer "obviously misread the street sign"); *United States v. Avarello*, 592 F.2d 1339, 1344 (5th Cir. 1979) (holding that a search warrant was valid even though it specified the wrong city for the Defendant's residence because the search warrant included the correct street address and described in detail what the building looked like).

Assuming that the search warrant was mistaken when it stated that Plaintiff's residence was in Ellendale, Delaware, the search warrant was still valid because it described Plaintiff's residence with sufficient particularity such that an officer could identify the place to be searched with reasonable effort. For example, the search warrant stated that the place to be searched was located at "9008 Greentop Road" in "Sussex County, Delaware" – the same county where both Lincoln and Ellendale are located. (Ex. B. at 1.) The warrant further described the place to be searched as "a trailer located on the West side of Greentop Road. The trailer is beige/tan with white trim, a white foundation, white front door with the numbers '9008' to the right side of the door." (*Id.*) Plaintiff does not claim that any of that information is wrong. Nor does Plaintiff point to a second residence in either Ellendale or Lincoln with the address 9008 Greentop Road

that might be confused with Plaintiff's residence. Accordingly, even if the search warrant was

mistaken when it stated that Plaintiff's residence was in Ellendale, Delaware, the search warrant

was still valid because it particularly described Plaintiff's residence. *See Durk*, 149 F.3d at 465-

66; *Robinson*, 783 F.2d at 738; *Avarello*, 592 F.2d at 1344.

It is also important to note that – as the search warrant makes clear – Marzec had been to

Plaintiff's residence on numerous occasions before he applied for the warrant. (*See, e.g.*, Ex. B

¶ 11 (describing how Marzec conducted surveillance of Plaintiff's residence on Greentop Road).)

Many courts have upheld search warrants with minor errors when, as here, the officer who

applied for and executed the warrant was familiar with the place to be searched. *See, e.g., United*

*States v. Clement*, 747 F.2d 460, 461 (8th Cir. 1984) (finding that warrant's description

denominating incorrect apartment not fatal because the officer had been to residence before,

actually knew where suspect lived, and went directly to his apartment in executing the warrant);

*Robinson*, 783 F.2d at 738 ("Moreover, where the same officer both applied for and executed the

warrant, a mistaken search is unlikely. Therefore, we find the warrant description sufficient and

the warrant valid.") (citations omitted). Accordingly, there was no chance that Marzec would

search the wrong residence. For all these reasons, the search warrant complied with the Fourth

Amendment and Plaintiff's Complaints should be dismissed.

2. **Plaintiff's allegation that Marzec and Jacobs deprived him of due process when they turned the property over to the DEA does not state a claim.**

Plaintiff's other claim is that Marzec and Jacobs are somehow liable because they turned

the property they seized from Plaintiff over to the DEA, which purportedly had "no legal or

practical purpose" to "receive or hold" the property. Although it is not clear what theory Plaintiff

is pursuing with this claim, he could be raising another *Bivens* claim, namely, that Marzec and

Jacobs deprived him of his property without due process of law. If Plaintiff is raising a

*Bivens* claim, that claim must be dismissed.

The notion that Marzec and Jacobs deprived Plaintiff of his property without due process

of law is foreclosed by the Supreme Court's decision in *Calero-Toledo v. Pearson Yacht Leasing

Co.*, 416 U.S. 663 (1974). In *Calero-Toledo*, the Supreme Court held the federal government

could seize personal property for purposes of forfeiture without providing a pre-seizure notice

and hearing, because "seizure for purposes of forfeiture is one of those extraordinary situations

that justify postponing notice and opportunity for a hearing." *Id.* at 677. Due process requires

only a post-seizure notice and opportunity for a hearing, and Plaintiff does not claim that he has

been denied those rights, nor could he. (*See* Ex. A, C.A. No. 05-839, Doc. No. 7 at 1 (document

filed by Plaintiff admitting that he received post-seizure notice.);[3] *see also Bye v. United States*,

105 F.3d 856, 857 (2d Cir. 1997) (holding that due process is satisfied if the person receives

notice that is "reasonably calculated, in the circumstances, to apprise [the person] of the

pendency of the administrative forfeiture proceeding and to afford him an opportunity to present

his objections"). Accordingly, Marzec and Jacobs are entitled to qualified immunity and

---

[3]The Court can take judicial notice of publicly filed documents. *See, e.g. DiLorenzo v. Edgar*, C.A. No. 03-841-SLR, 2004 WL 609374, at *2 (D. Del. Mar. 24, 2004) (citing *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000)).

Plaintiff's due process claim – if he is making one – should be dismissed. *See, e.g., Cole v. Sharp*, 898 F. Supp. 799, 804 (D. Kan. 1995) (finding that the defendants were entitled to qualified immunity from claims challenging seizure for the purpose of forfeiture because plaintiff was not entitled to pre-seizure notice and opportunity for a hearing).

**C.**    **Plaintiff's Allegation That It Was Somehow Improper For Marzec And Jacobs To Turn The Property Over To The DEA Does Not State A Claim.**

Although it is not clear, Plaintiff could be claiming that Marzec and Jacobs violated some unstated federal or state law when they turned Plaintiff's property over to the DEA. If so, that claim should also be dismissed for failure to state a claim. Plaintiff appears to be alleging that it was improper to turn the property over to the DEA because the DEA was not prosecuting Plaintiff. However, federal law allows the federal government to forfeit property that is the proceeds of criminal activity, including drug distribution. *See* 21 U.S.C. § 881. A forfeiture action pursuant to § 881 is a civil action that does not require a federal (or any) criminal prosecution. *See, e.g., United States v. Ten Thousand Seven Hundred Dollars and No Cents in United States Currency*, 258 F.3d 215, 224 n.6 (3d Cir. 2001) ("We recognize, of course, that forfeiture under § 881(a) is not conditioned upon an arrest or conviction for a drug offense."). Accordingly, Plaintiff's allegation that Marzec and Jacobs could not turn his property over to the DEA to be forfeited merely because the DEA was not prosecuting Plaintiff should be dismissed.[4]

---

[4] All claims against Marzec in his official capacity are barred by sovereign immunity and should be dismissed. *See Chinchello v. Fenton*, 805 F.2d 126, 130 n.4 (3d Cir. 1986).

## II.   DEFENDANTS MARZEC AND JACOBS ARE ENTITLED TO SUMMARY JUDGMENT.

### A.   Standard Of Review Of A Fed. R. Civ. P. 56 Motion.

The Court need not consider the attached declarations of Marzec and Jacobs to dismiss Plaintiff's Complaints pursuant to Fed. R. Civ. P. 12(b)(6). If the Court considers those declarations, however, the Court should convert Marzec's and Jacobs's motion to a motion for summary judgment, *see, e.g., Couden v. Duffey*, 305 F. Supp. 2d 379, 385 (D. Del. 2004), and dismiss Plaintiff's Complaints.

Fed. R. Civ. P. 56 provides that summary judgment shall be entered if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Id.* (quoting FED. R. CIV. P. 56(c)). When presented with a motion for summary judgment, a plaintiff is not allowed to rest on his allegations – rather, he has the burden to set forth by affidavit or otherwise "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing summary judgment – like Plaintiff – is not entitled to any discovery unless he identifies "with specificity what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Couden*, 305 F. Supp. 2d at 386 (quoting *St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309, 1314 (3d Cir. 1994)).

As explained below, the attached declarations show that Marzec and Jacobs are entitled to summary judgment of Plaintiff's claims.

### B.   Marzec And Jacobs Are Entitled To Qualified Immunity Because They Reasonably Relied In Good Faith On The Validity Of The Search Warrant.

The Supreme Court has explained that police officers are entitled to qualified immunity if they reasonably rely on the validity of a search warrant that is later determined to be not valid.

*See, e.g., Arizona v. Evans*, 514 U.S. 1, 11 (1995) (citing *Leon*, 468 U.S. at 922); *see also Groh v. Ramirez*, 540 U.S. 551, 565 n.8 (2004) (explaining that *Leon*'s "objective reasonableness" standard also "defines the qualified immunity accorded an officer"). Accordingly, even if Marzec and Jacobs used an invalid search warrant to seize Plaintiff's property, they would still be entitled to qualified immunity because they reasonably believed that the search warrant was valid.

For example, in *Evans*, a police officer entered the defendant's name into his patrol car's computer data terminal, which subsequently indicated that there was an outstanding warrant for the defendant's arrest. 514 U.S. at 7. Based on the outstanding warrant, the officer arrested the defendant and discovered some marijuana in the defendant's possession. *Id.* It turned out that the arrest warrant was not valid but due to an apparent clerical error by a court employee, that information was not relayed to the police. *Id.* The defendant in *Evans* accordingly moved to suppress the marijuana on the basis that it was seized pursuant to an invalid warrant. *Id.*

The Supreme Court rejected that argument and held that the marijuana fell within *Leon*'s good faith exception to the exclusionary rule. *Id.* at 14. The Supreme Court so held because there was "no indication that the arresting officer was not acting objectively reasonably when he relied upon the police computer record." *Id.* at 17; *see also Leon*, 468 U.S. at 922 (holding that evidence is not subject to the exclusionary rule when it is seized by police officers who reasonably rely on the validity of a warrant later determined to be invalid).

Here, just like in *Evans*, there is no indication that Marzec was not acting objectively reasonably when he applied for a search warrant stating that the Plaintiff resided in Ellendale, Delaware. In fact, Marzec's declaration shows that he and Jacobs reasonably believed that Plaintiff resided in Ellendale, Delaware. Marzec states he conducted surveillance of the trailer

located at 9008 Greentop Road in Sussex County, Delaware, and observed Plaintiff and his

girlfriend, Tawanda Weatherspoon, enter and leave the trailer on numerous occasions. (Marzec

Decl., Ex. C ¶ 4.) Before applying for the search warrant, Marzec entered Hickman's and

Weatherspoon's name into the Delaware Criminal Justice Information System computer to

determine their listed address. (*Id.* ¶ 6.) The computer indicated that Plaintiff lived at an address

that Marzec knew was not the Greentop Road location. (*Id.*) The computer indicated that

Weatherspoon lived at a rural route address in Ellendale, Delaware. (*Id.*) Marzec knew, upon

information and belief, that a few years ago Delaware stopped using rural route addresses for

many residences in Sussex County and replaced those addresses with street names. (*Id.* ¶ 7.)

Neither Marzec nor Jacobs had any reason to believe that the computer was wrong to indicate

that Weatherspoon lived in Ellendale. (*Id.* ¶ 8; Jacobs Decl. Ex. D ¶ 4.) Based on all the

foregoing factors, including Marzec's knowledge that Plaintiff and Weatherspoon lived together,

Marzec and Jacobs reasonably believed that the was correct when it indicated that Plaintiff's and

Weatherspoon's trailer was located in Ellendale, Delaware. Accordingly, Marzec and Jacobs

reasonably believed that the search warrant was valid and, therefore, they are entitled to qualified

immunity and Plaintiff's Complaints should be dismissed.

**C.    Marzec And Jacobs Seized Plaintiff's Property On Behalf Of The DEA; They
        Did Not Turn Plaintiff's Property Over To The DEA.**

Marzec and Jacobs are also entitled to summary judgment of Plaintiff's claim that they

improperly turned Plaintiff's property over to the DEA. As demonstrated in Marzec's and

Jacobs's declarations, both Marzec and Jacobs were working for the DEA at the time they

searched and seized Plaintiff's property. (*See* Marzec Decl. Ex. C ¶¶ 1, 8; Jacobs Decl. Ex. D

¶¶ 1, 3.) Accordingly, Marzec and Jacobs seized Plaintiff's property on behalf of the DEA.

Thus, Marzec and Jacobs did not turn Plaintiff's property over to the DEA – the property was in the DEA's possession the whole time. Marzec and Jacobs are therefore also entitled to summary judgment of this claim.

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaints should be dismissed pursuant to Fed. R.

Civ. P. 12(b)(6) for failure to state a claim.  In the alternative, Defendant's Marzec and Jacobs

are entitled to summary judgment of Plaintiff's Complaints.

DATED:  March 31, 2006.

Respectfully Submitted,

COLM F. CONNOLLY
United States Attorney

By:_____/s/ Seth M. Beausang_____
Seth M. Beausang (I.D. No. 4071)
Assistant United States Attorney
The Nemours Building
1007 Orange Street, Suit 700
Wilmington, DE 19801
(302) 573-6277

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

STEVE HICKMAN,                          :
                                        :
          Plaintiff,                    :      CONSOLIDATED
                                        :      Civil Action No. 05-811-KAJ
     v.                                 :      Civil Action No. 05-839-KAJ
                                        :
DETECTIVE MARZEC, in his                :
individual and official capacity,       :
DAVID HUME IV, TOWN OF                  :
DELMAR, DEPARTMENT                      :
OF DRUG ENFORCEMENT,                    :
and AGENT TOM JACOBS,                   :
                                        :
          Defendants.                   :

## CERTIFICATE OF SERVICE

I, Seth M. Beausang, hereby attest under penalty of perjury that on this 31st day of March, 2006, I caused two copies of Defendants Marzec's and Jacobs's Motion to Dismiss Or, In the Alternative, for Summary Judgment, Opening Brief in Support Thereof and Proposed Order to be served on the Plaintiff by First Class Mail at the following address:

Steve A. Hickman
9008 Green Top Rd.
Lincoln, DE 19960

and counsel for the Town of Delmar by First Class Mail at the following address:

Daniel A. Griffith, Esq.
1220 Market Street, 5th Floor
Wilmington, DE. 19801

                              _____/s/ Seth M. Beausang_____
                              Seth M. Beausang (DE I.D. No. 4071)

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STEVE A. HICKMAN & | ] | |
| TAWANDA WEATHERSPOON | ] | C.A. No. 05-839 *KAJ* |
| Plaintiffs | ] | |
| | ] | |
| vs | ] | |
| | ] | |
| DET. MARZEC & DRUG | ] | |
| ENFORCEMENT ANGENGY | ] | |
| Defendants | ] | |
| | ] | |

Now comes the plaintiffs, Steve Hickman and Tawanda Weatherspoon, pro se, who so moves the Honor Court, with this Attachment, as it goes as follows:

(`1). On 12-27-05, we received notice of certified letter from Drug Enforcement Agency, about our illegally seized property.

a.  This is definitely a violation of our Due Process rights and Equal Protection of the Law. [14th Amendment].

b.  This notification comes after more than three (3) months After the seizures as well as a hearing in the Superior Court in the Month  of November, in which this information should have been Made available to plaintiffs

This show a consistent and deliberate pattern that is throughout The whole case, with only one intent, to cause the plaintiffs undue harm And distress under the color of the law.

The Drug Enforcement Agency. Have no legal or lawful reason Or rationale behind the seizures or need to continue to possess the Personal property of plaintiffs and a Order should be issued to give the Necessary relief.

FILED

JAN - 4 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Respectfully, submitted

*Steve Hickman*    *and Tawanda Weatherspoon*
Tawanda Weatherspoon
Steve Hickman
12-29-05

ccDet Marzec & DEA

Forfeiture Counsel
Asset Forfeiture Section
Office of Operations Management
Drug Enforcement Administration
P.O. Box 1475 ,
Quantico, Virginia 22134-1475

Asset Forfeiture Section
Office of Operation Management
Drug Enforcement Administration
2401 Jefferson Davis Highway
Alexandria, Va. 22301

     Re; Property of Tawanda Weatherspoon & Steve Hickman
     Asset # 05-DEA-457634 & 05-DEA-457638

Dear Sir or Madam:

     We are responding to the Department of Drug Enforcement
Adminstration's
attempt of forfeiture of our money and Dodge Durango. A petiton has already
been
filed in U.S. District Court for the District of Delaware for Return of this Illegally
seized property,

     (1). The search warrant utilized was invalid, because it was for a residence
in Ellendale, Delaware and property was seized from a residence in Lincoln, DE.

     (2). The wasn't used in any drug/illegal transaction or obtained throuht the
profit from any illegal activities.

     (3). A few years ago Ms _Dawn Denson_ , loan us $30,000  to
begin Mobile Home Rental business.

     (4). We purchased three homes, renovated them and began renting them
a few years ago.

     a. The $12,900 is part of that money and profits made through our legal,
and licensed business.

     b. The Housing Authority recognizes our business and provide financial
assistance for several of our tenants.

     Alot of these records are in your possession, because for some unknown

reason they were seized as well on 09-21-05

(5). The Dodge Durango, has never been, used illegally and personal property of Tawanda Weatherspoon,(a) she has never been involved in any drug or illegal activities and never charge with any type of crime,

(6). The illegal seizures of aforementioned legal and lawful property of Tawanda Weatherspoon and Steve Hickman, has created undue burdens and hardships upon them and their family and have jeopardize their business as well as the health and welfare of them and their three (3) minor children.

SWORN and Subscribed)
Sussex County            ) SS:
State of     DELAWARE)

Sworn and Subscribed, before me a Notary Public for the State of Delaware, in and for the Sussex County, Tawanda Weatherspoon and Steve Hickman, with their signatures, verify the above statements to be the truth to the best their knowledge, under the penalty of perjury, on this 25th day of December, in the year of the Lord 2005, A.D.

_Kathleen E Wilton_
Signature & Seal of Notary

_Tawanda Weatherspo__
Tawanda Weatherspoon

_Steve Hick__
Steve Hickman
9008 Greentop Rd
Lincoln, DE. 19960



**U.S. DEPARTMENT OF JUSTICE**
**DRUG ENFORCEMENT ADMINISTRATION**

| | |
|---|---|
| Asset Id: | 05-DEA-457638 |
| Case Number: | CP-05-0036 |
| Property: | 1999 Dodge Durango MPV 4WD SLT SUV |
| Vehicle ID Number: | 1B4HS28Y0XF623450 |
| Asset Value: | $5,950.00 |
| Seizure Date: | 09/21/2005 |
| Seizure Place: | Ellendale, DE |
| Owner Name: | Hickman, Steven Andrew |
| Seized From: | Hickman, Steven Andrew |
| Judicial District: | District of Delaware |

Tawanda Renee Weatherspoon
9008 Greentop Road
Lincoln, DE 19960-2908

**NOTICE MAILING DATE:** December 22, 2005

### NOTICE OF SEIZURE

The above-described property was seized by Special Agents of the Drug Enforcement Administration (DEA) for forfeiture pursuant to Title 21, United States Code (U.S.C.), Section 881 , because the property was used or acquired as a result of a violation of the Controlled Substances Act (Title 21, U.S.C., Sections 801 et seq.). The seizure date and place, as well as other pertinent information regarding the property are listed above.

Pursuant to Title 18, U.S.C., Section 983 and Title 19, U.S.C., Sections 1602-1619, procedures to administratively forfeit this property are underway. You may petition the DEA for return of the property or your interest in the property (remission or mitigation), and/or you may contest the seizure and forfeiture of the property in Federal court. You should review the following procedures very carefully.

### TO REQUEST REMISSION OR MITIGATION OF FORFEITURE

If you want to request the remission (pardon) or mitigation of the forfeiture, you must file a petition for remission or mitigation with the Forfeiture Counsel of the DEA within thirty (30) days of your receipt of this notice. The petition must include proof of your

interest in the property and state the facts and circumstances which you believe justify remission or mitigation. The regulations governing the petition process are set forth in Title 28, Code of Federal Regulations, Part 9.

### TO CONTEST THE FORFEITURE

In addition to, or in lieu of petitioning for remission or mitigation, you may contest the forfeiture of the seized property in UNITED STATES DISTRICT COURT. To do so, you must file a claim with the Forfeiture Counsel of the DEA by **January 26, 2006.** The claim need not be made in any particular form (Title 18, U.S.C., Section 983(a)(2)(D)). The claim shall identify the specific property being claimed; state the claimant's interest in such property; and be made under oath, subject to penalty of perjury (Title 18, U.S.C., Section 983(a)(2)(C)). A frivolous claim may subject the claimant to a civil fine in an amount equal to ten (10) percent of the value of the forfeited property, but in no event will the fine be less than $250 or greater than $5,000 (Title 18, U.S.C., Section 983(h)). Upon the filing of a claim under Title 18, U.S.C., Section 983(a), a claimant may request, pursuant to Section 983(f), release of the seized property during the pendency of

the forfeiture proceeding due to hardship. Requests must be sent to the Forfeiture Counsel of the DEA. The following property is not eligible for hardship release: contraband, currency, or other monetary instruments or electronic funds unless the property constitutes the assets of a legitimate business which has been seized; property to be used as evidence of a violation of the law; property, by reason of design or other characteristic, particularly suited for use in illegal activities; and property likely to be used to commit additional criminal acts if returned to the claimant. If you wish to contest the forfeiture of the asset, you must comply with the procedures set forth herein. Your failure to do so will result in the termination of your interest in the asset, and may preclude your contesting the forfeiture of the asset in any judicial proceeding - either civil or criminal - even if such a proceeding has already been commenced or is commenced in the future.

### WHERE TO FILE CORRESPONDENCE

All submissions must be filed with the  Forfeiture Counsel, Asset Forfeiture Section, Office of Operations Management, Drug Enforcement Administration, HQs Forfeiture Response, P.O. Box 1475, Quantico, Virginia 22134-1475. Correspondence sent via private delivery must be sent to Asset Forfeiture Section, Office of Operations Management, Drug Enforcement Administration, 2401 Jefferson Davis Highway, Alexandria, VA 22301. A PETITION, CLAIM, OR OTHER CORRESPONDENCE WILL BE DEEMED FILED WHEN ACTUALLY RECEIVED BY THE DEA ASSET FORFEITURE SECTION IN ARLINGTON, VIRGINIA. SUBMISSIONS BY FACSIMILE OR OTHER ELECTRONIC MEANS WILL NOT BE ACCEPTED. The Asset Id referenced above should be used with all submissions. Failure to include the Asset ID may cause a delay in processing your submission(s).



## U.S. DEPARTMENT OF JUSTICE
## DRUG ENFORCEMENT ADMINISTRATION

Tawanda Renee Weatherspoon
9008 Greentop Road
Lincoln, DE 19960-2908

| | |
|---|---|
| Asset Id: | 05-DEA-457634 |
| Case Number: | CP-05-0036 |
| Property: | $13,320.00 U.S. Currency |
| Asset Value: | $13,320.00 |
| Seizure Date: | 09/21/2005 |
| Seizure Place: | Ellendale, DE |
| Owner Name: | |
| Seized From: | Hickman, Steven |
| Judicial District: | District of Delaware |

**NOTICE MAILING DATE:** December 22, 2005

### NOTICE OF SEIZURE

The above-described property was seized by Special Agents of the Drug Enforcement Administration (DEA) for forfeiture pursuant to Title 21, United States Code (U.S.C.), Section 881 , because the property was used or acquired as a result of a violation of the Controlled Substances Act (Title 21, U.S.C., Sections 801 et seq.). The seizure date and place, as well as other pertinent information regarding the property are listed above.

Pursuant to Title 18, U.S.C., Section 983 and Title 19, U.S.C., Sections 1602-1619, procedures to administratively forfeit this property are underway. You may petition the DEA for return of the property or your interest in the property (remission or mitigation), and/or you may contest the seizure and forfeiture of the property in Federal court. You should review the following procedures very carefully.

### TO REQUEST REMISSION OR MITIGATION OF FORFEITURE

If you want to request the remission (pardon) or mitigation of the forfeiture, you must file a petition for remission or mitigation with the Forfeiture Counsel of the DEA within thirty (30) days of your receipt of this notice. The petition must include proof of your

interest in the property and state the facts and circumstances which you believe justify remission or mitigation. The regulations governing the petition process are set forth in Title 28, Code of Federal Regulations, Part 9.

### TO CONTEST THE FORFEITURE

In addition to, or in lieu of petitioning for remission or mitigation, you may contest the forfeiture of the seized property in UNITED STATES DISTRICT COURT. To do so, you must file a claim with the Forfeiture Counsel of the DEA by January 26, 2006. The claim need not be made in any particular form (Title 18, U.S.C., Section 983(a)(2)(D)). The claim shall identify the specific property being claimed; state the claimant's interest in such property; and be made under oath, subject to penalty of perjury (Title 18, U.S.C., Section 983(a)(2)(C)). A frivolous claim may subject the claimant to a civil fine in an amount equal to ten (10) percent of the value of the forfeited property, but in no event will the fine be less than $250 or greater than $5,000 (Title 18, U.S.C., Section 983(b)). Upon the filing of a claim under Title 18, U.S.C., Section 983(a), a claimant may request, pursuant to Section 983(f), release of the seized property during the pendency of

the forfeiture proceeding due to hardship. Requests must be sent to the Forfeiture Counsel of the DEA. The following property is not eligible for hardship release: contraband, currency, or other monetary instruments or electronic funds unless the property constitutes the assets of a legitimate business which has been seized; property to be used as evidence of a violation of the law; property, by reason of design or other characteristic, particularly suited for use in illegal activities; and property likely to be used to commit additional criminal acts if returned to the claimant. If you wish to contest the forfeiture of the asset, you must comply with the procedures set forth herein. Your failure to do so will result in the termination of your interest in the asset, and may preclude your contesting the forfeiture of the asset in any judicial proceeding - either civil or criminal - even if such a proceeding has already been commenced or is commenced in the future.

### WHERE TO FILE CORRESPONDENCE

All submissions must be filed with the Forfeiture Counsel, Asset Forfeiture Section, Office of Operations Management, Drug Enforcement Administration, HQs Forfeiture Response, P.O. Box 1475, Quantico, Virginia 22134-1475. Correspondence sent via private delivery must be sent to Asset Forfeiture Section, Office of Operations Management, Drug Enforcement Administration, 2401 Jefferson Davis Highway, Alexandria, VA 22301. A PETITION, CLAIM, OR OTHER CORRESPONDENCE WILL BE DEEMED FILED WHEN ACTUALLY RECEIVED BY THE DEA ASSET FORFEITURE SECTION IN ARLINGTON, VIRGINIA. SUBMISSIONS BY FACSIMILE OR OTHER ELECTRONIC MEANS WILL NOT BE ACCEPTED. The Asset Id referenced above should be used with all submissions. Failure to include the Asset ID may cause a delay in processing your submission(s).

IN THE UNITED STATE DISTRICT COURT FOR THE DISTRICT OF DELAWARE

STEVE A. HICKMAN                          ]
& TAWANDA WEATHERSPOON                     ]
    Petitioners                           ]
    vs                                    ]        C.A. No. _____
                                          ]
DET. MARZEC & DEPARTMENT OF                ]
DRUG ENFORCEMENT AGENCY                    ]
    Respondents                           ]
                                          ]        dated: 12/12/05

## PETITION FOR RETURN OF PROPERTY

NOW Comes the petitioners, Steve A. Hickman and Tawanda Weatherspoon, who

So moves the Honorable Court for the Return of their Illegally seized property, and submit

The following in support of the same:

[a]. Det. Marzec and several Police Officer as well as two DEA agents, on 21st day of September 2005, executed a search warrant for a residence in Ellendale, Delaware, illegally searched and seized personal property of Steve Hickman and Tawanda Weatherspoon, who live in Lincoln, Delaware.

[b]. Since date to now Det. Marzec and the Drug Enforcement Agency, have held, utilized and controlled the latter mentioned property, while denying petitioner any type of Due Process of opportunity to regain their illegally seized property.

The facts in responses has totally misrepresented the facts in this case. A

Preliminary Hearing was held on 09-29-05 and the under oath testimony of Det Marzec,

contradicts nearly every fact raised in the resonse by Mr. Martin B. O'Connor. I will enter

the official transcripts of that hearing as well as the Search Warrant used, plus the arrest

warrants utilized by Det Marzec, on the 30th of June and 21st of September.

(1). Det Marzec prepared both Arrest Warrant and Affidavits of Probable Cause and executed both arrest and pursued them not in Federal Courts, but the State of Delaware Court's system. [A-1 thru A-3 & B-1 thru B-3]

(a). The Possession with Intent to Deliver, on 09-21-05, [B-2] is the same in time, date and location as the Possession with Intent to Deliver, on 06-30-05. [A-2] [look at A-3 and compare it to B-3]

(2). Whe asked on the stand under oath about his investigation on the 23rd of June 2005, about did he observe Steve in possession of the plastic bag containing the crack he responded , he didn't see it in his possession that day.

AA-24 reads:

Q. Question : Did you see Steve a Hickman place a plastic bag in the sign?

A.    I did not see a plastic bag, no

In reality no probable cause happen or existed that would support the 23rd as being

the basis for Possession with Intent charge used to arrest Steve Hickman on 09-21-05.

(3). When asked under oath about the Search Warrant, used on 09-21-05 Det Marzec responded , that the warrant was for a residence in Ellendale Delaware, and even stopped in the Town of Ellendale and had the Police Officer of that Town follow him to a residence in Lincoln that he believe was Ellendale.

AA-27 reads:

Q.    Question: Did you apply for this Search Warrant for a residence in Ellendale Delaware?

A.    I applied for the search warrant for Steven Hickman, black male, five seven, two fifty, date of birth 3/19/80, premises known are located at 9008 Greentop Road, Ellendale, Sussex County Delaware.

(4). The Search Warrant list Ellendale as the Town twice also. [AA-1]

(5). No new charges came about as a result of the Search and Seizures [State or Federal] as well as no charges are pending in any Federal Court that the seized property is needed for any prosecution.

These facts were known by Det Marzec at the time of the seizures and the procedures

being used now to deny Steve Hickman and Tawanda Weatherspoon of their legal and lawful

property, is illegal, unlawful, unconstitutional and serves no purposes for the State of Delaware

or the U.S. Government.

(6). First the property shouldn't have been seized, Secondly it should have never left the premises and thirdly the State should participate in the "passing of the buck procedure" it is doing now.

(a). A Delaware Judge issued the Search Warrant, A Delaware Police Officer applied for it as well applied for Arrest warrants, that are being prosecuted in the Delaware Court system, to use the DEA presence as excuse to abuse the petitioners this way is ridiculous.

The property Receipt recieved by Hickman and Weatherspoon wasn't legible at all and

they were not able to obtain any valuable information from it.

Respectfully, submitted

*Steve Hick*

Steve Hickman

*Tawanda Weatherspoon*

Tawanda Weatherspoon

9008 Greentop Rd

Lincoln, DE. 19960 302-422-9337

*Kathleen E. Wells*

Notary Public

Cc: Det. Marzec
U.S. Dept. of Justice

Steve Hukerie
Tawanda Westargoon
3006 GreenTop Rd
Lincoln DE 19960

Clerk Distruct Court
U. S. Distruct Court
844 King St
Wilmington, DE 19801

# EXHIBIT B

IN THE SUPERIOR COURT
STATE OF DELAWARE
SUSSEX COUNTY

## SEARCH WARRANT

IN THE MATTER OF: Steve HICKMAN B/M, 5'07", 250 lbs., DOB: 03-19-1980
AND THE PREMISE KNOWN/LOCATED AT 9008 Greentop Road Ellendale, Sussex County,
Delaware. The premises is further described as a trailer located on the West side of Greentop
Road. The trailer is beige/tan with white trim, a white foundation, white front door with the
numbers "9008" to the right side of the front door. ANY AND ALL STORAGE AREAS,
OUTBUILDINGS, SHEDS, DOGHOUSES, LOCATED ON THE CURTILAGE, AND ANY
AND ALL PERSONS PRESENT, BEING IN THE COUNTY OF SUSSEX, STATE OF
DELAWARE.
THE STATE OF DELAWARE TO: Task Force Officer/Detective Ronald A. Marzec
WITH THE ASSISTANCE OF ANY LAW ENFORCEMENT OFFICER OR ANY
NECESSARY PERSON.

## GREETINGS:

Upon the annexed affidavit and application or complaint for a search warrant, as I am satisfied
that there is probable cause to believe that certain property, namely:
(See Exhibit "A")
is being concealed on the person, vehicle and/or property known as:
Steve HICKMAN B/M, 5'07", 250 lbs., DOB: 03-19-1980
AND THE PREMISE KNOWN/LOCATED AT 9008 Greentop Road Ellendale, Sussex County,
Delaware. The premises is further described as a trailer located on the West side of Greentop
Road. The trailer is beige/tan with white trim, a white foundation, white front door with the
numbers "9008" to the right side of the front door. ANY AND ALL STORAGE AREAS,
OUTBUILDINGS, SHEDS, DOGHOUSES, LOCATED ON THE CURTILAGE, AND ANY
AND ALL PERSONS PRESENT, BEING IN THE COUNTY OF SUSSEX, STATE OF
DELAWARE, described in the annexed affidavit and application or complaint;

   NOW THEREFORE, YOU ARE HEREBY COMMANDED within ten (10) days of
the date hereof to search the above named person, vehicle and premises or place for the property
specified in the annexed affidavit and application, and to search any occupant or occupants found
in the house, place and conveyance above named for such property, serving this warrant and
making the search in the daytime, and, if the property papers, articles or things, or any part
thereof, be found there, to seize it, prepare a written inventory of the property seized and to return
a copy of the inventory and this warrant to me forthwith and the person and/or persons in whose
custody or possession, the property was found to be dealt with according to the law.

DATED the ___ day of September, A.D. 2005.

IN THE SUPERIOR COURT
STATE OF DELAWARE
SUSSEX COUNTY

AFFIDAVIT AND APPLICATION
FOR SEARCH WARRANT

IN THE MATTER OF: Steve HICKMAN B/M, 5'07", 250 lbs., DOB: 03-19-1980
AND THE PREMISE KNOWN/LOCATED AT 9008 Greentop Road Ellendale, Sussex County,
Delaware. The premises is further described as a trailer located on the West side of Greentop
Road. The trailer is beige/tan with white trim, a white foundation, white front door with the
numbers "9008" to the right side of the front door. ANY AND ALL STORAGE AREAS,
OUTBUILDINGS, SHEDS, DOGHOUSES, LOCATED ON THE CURTILAGE, AND ANY
AND ALL PERSONS PRESENT, BEING IN THE COUNTY OF SUSSEX, STATE OF
DELAWARE.
Be it remembered that on this 24 day of September, A.D. 2005, before me,
personally appeared Detective / Task Force Officer Ronald A. Marzec, Delmar Police
Department / United State's Department of Justice Drug Enforcement Administration, who being
duly sworn depose and say that they have reason to believe and do believe that in the property of
Steve HICKMAN B/M, 5'07", 250 lbs., DOB: 03-19-1980
AND THE PREMISE KNOWN/LOCATED AT 9008 Greentop Road Ellendale, Sussex County,
Delaware. The premises is further described as a trailer located on the West side of Greentop
Road. The trailer is beige/tan with white trim, a white foundation, white front door with the
numbers "9008" to the right side of the front door. ANY AND ALL STORAGE AREAS,
OUTBUILDINGS, SHEDS, DOGHOUSES, LOCATED ON THE CURTILAGE, AND ANY
AND ALL PERSONS PRESENT, BEING IN THE COUNTY OF SUSSEX, STATE OF
DELAWARE, there has been and/or there is now located and/or concealed certain property in
said house, place, conveyance, and/or on the person/persons or occupants thereof, consisting of

property, papers, articles or things which are instruments of a criminal offense, and/or obtained in
the commission of a crime, and/or designated to be used in the commission of a crime and not
reasonably calculated to be used for any other purpose and/or the possession of which is unlawful
and, in particular:
(See Exhibit "A")
Which said property, papers, articles or things were, are or will be possessed and/or used in
violation of Title 16, Chapter 4751 thru 4755;

## PROBABLE CAUSE

And that the facts tending to establish probable cause for believing that the foregoing grounds for the application exists area as follows:

1. That your affiant is Detective / Task Force Officer Ronald A. Marzec who has been employed by the Delmar Police Department since January 1994. Your affiant is currently assigned to the United State's Department of Justice Drug Enforcement Administration Drug Task Force. Your affiant's duties in this capacity include the investigation and enforcement of illegal drug and money laundering violations. Your affiant graduated from the Eastern Shore Criminal Justice Academy where your affiant received 647 hours of training, which included training in the detection and recognition of controlled dangerous substances. Your affiant received updated training on an annual basis in the areas of controlled dangerous substance violation, investigations and arrests. Your affiant has authored in excess of fifty search warrants and has assisted in making in excess of 100 arrests where controlled dangerous substances were seized.

2. During the month of May, 2005, your affiant received information from several law enforcement agencies about a B/M named Steve HICKMAN who was distributing cocaine in the Sussex County, Delaware area. The information advised that HICKMAN lists his address through the Delaware Department of Motor vehicles as residing in Dagsboro, Delaware although HICKAMN actually resided on Greentop Road Ellendale, Delaware.

3. During the month of May, 2005 your affiant met with a confidential source, hereinafter referred to as "A". "A" has been known to law enforcement for several years. During this time, "A" has related information to law enforcement that has resulted in arrests and the seizure of controlled substances. "A" has never provided information to law enforcement proven to be false. "A" advised your affiant that "A" was familiar with a black male known to "A" as Steve HICKMAN, ("A" also knew HICKMAN by the nickname LITTLEMAN) who was involved in a cocaine distribution organization in the Sussex County, Delaware area. "A" advised your affiant that HICKMAN resides on Greentop Road Ellendale, Delaware with his girlfriend (Unknown name). "A" stated that HICKMAN sells cocaine from his residence on Greentop Road and keeps proceeds from sales of drugs at his Greentop Road residence. "A" advised that HICKMAN departs his residence around lunch time and travels to a trailer park located south of Ellendale, Delaware known to "A" as "the hole". "A" stated that HICKMAN travels to a trailer located in the rear of the trailer park where HICKMAN utilizes a trailer as a packaging/sale house. "A" advised that HICKMAN will arrive around lunch time and remain at the location where HICKMAN will sell cocaine to his customers. "A" stated that HICKMAN will travel from this location once or twice a week and purchase cocaine from his source and return to his packaging/sale house where HICKMAN will cook the powder cocaine into crack cocaine. HICKMAN will take the crack cocaine and divide the crack cocaine into several packages. HICKMAN will then take the packages and hide the packages of cocaine in several locations along the roadside in remote country areas around Ellendale, Delaware. "A" stated that HICKMAN divides the cocaine into smaller packages to avoid being caught by law enforcement with larger amounts of cocaine that would carry enhanced penalties. "A" stated that a black male known to "A" as LEE LEWIS is related to HICKMAN and assists HICKMAN with the distribution

organization. "A" stated that when LEE and HICKMAN travel out of the hole together, they are usually traveling to HICKMAN's source to obtain cocaine. "A" advised that HICKMAN travels back to his Greentop Road residence at the end of the night when HICKMAN is finished selling cocaine for the day. "A" stated that HICKMAN takes his proceeds from the sale of cocaine back to his Greentop residence and keeps his money secreted within the residence. "A" advised your affiant that HICKMAN owns several properties around the Ellendale area that HICKMAN has bragged about purchasing the properties with proceeds from drug transactions.

4. During the month of June, 2005, your affiant and "A" traveled to Greentop Road Ellendale, Delaware where "A" pointed to two trailers located on the West side of Greentop Road. "A" advised your affiant that HICKMAN resided in the single wide trailer at the present time but was in the process of moving into the tan double wide located next to the singlewide trailer. "A" and your affiant traveled to a trailer park south of the town of Ellendale. "A" pointed to two trailers that were located on the north east dead end area of the trailer park. "A" advised your affiant that the two trailers were operated by HICKMAN as the packaging/sales house.

5. During the month of May, 2005 your affiant queried the Delaware Criminal Justice Information System in reference to Steve HICKMAN. Your affiant obtained a photo of HICKMAN and your affiant learned the following:
   > A: HICKMAN was arrested on 11-22-1996 by Delaware State Police for Trafficking in Cocaine.

6. During the month of June, 2005 your affiant and members of Law Enforcement conducted surveillance of HICKMAN. Surveillance was established in the area of New Hope Road Ellendale, Delaware (A.K.A. The Hole). Law enforcement officers observed HICKMAN arrive at his packaging/sales trailers. Shortly after HICKMAN's arrival Law Enforcement Officers observed numerous vehicles per hour arrive at the sales residence. Law Enforcement Officers observed HICKMAN walk from the trailer and walk up to the vehicles. Officers observed HICKAMN engage in brief conversations with the occupants of the vehicles and engage in transactions with subjects within the vehicles. Officers observed the vehicles depart the trailer park after the transactions. Your affiant noted that many of the vehicle remained at HICKMANS location for only a minute and depart after a transaction with HICKMAN. Your affiant knows through his training and experience that this type of activity is indicative of the distribution of illegal drugs.

7. On June 23, 2005 your affiant and members of law enforcement established surveillance of HICKMAN at his sales trailer. Law Enforcement Officers observed numerous vehicles per hour arrive at the sales residence. Law Enforcement Officers observed HICKMAN walk from the trailer and walk up to the vehicles. Officers observed HICKAMN engage in brief conversations with the occupants of the vehicles and engage in transactions with subjects within the vehicles. Officers observed the vehicles depart the trailer park after the transactions. Your affiant noted that many of the vehicle remained at HICKMANS location for only a minute and depart after a transaction with HICKMAN. Your affiant knows through his training and experience that this type of activity is indicative of the distribution of illegal drugs. Law Enforcement Officers observed HICKMAN enter an old pick-up truck. Law Enforcement Officers observed HICKMAN travel to a remote location West of Ellendale, Delaware. Officers observed HICKMAN park on the side of a road and appeared to be holding tissue paper in his hand and standing against a road sign. After a period of a few minutes, HICKMAN entered his pick-up truck and departed the area. Law Enforcement Officers searched the area where HICKMAN stopped and located a plastic bag wrapped in tissue secreted in the traffic sign. Your affiant observed the package to contain approximately nine grams of cocaine packaged in several plastic bags.

Your affiant sent the cocaine recovered from the street sign to the Drug Enforcement Administration for analysis. A certified chemist tested the substance and determined the substance to be cocaine.

9.  On June 30, 2005, your affiant and members of law enforcement conducted surveillance of HICKMAN at the Greentop Road area and observed HICKMAN depart his Greentop Road residence. HICKMAN traveled to his packaging/sales trailer located in "The Hole". Law Enforcement Officers observed numerous vehicles per hour arrive at the sales residence. Law Enforcement Officers observed HICKMAN walk from the trailer and walk up to the vehicles. Officers observed HICKAMN engage in brief conversations with the occupants of the vehicles and engage in transactions with subjects within the vehicles. Officers observed the vehicles depart the trailer park after the transactions. Your affiant noted that many of the vehicles remained at HICKMANS location for only a minute and depart after a transaction with HICKMAN. Your affiant knows through his training and experience that this type of activity is indicative of the distribution of illegal drugs. Law Enforcement Officers observed a black male identified as LEE LEWIS arrive at HICKMANS packaging/sales trailer. Law Enforcement Officers observed HICKMAN and LEWIS enter a Cadillac with another black male. Law Enforcement Officers observed HICKMAN then travel to a residence located north of Ellendale and meet with a black male subject. Law Enforcement Officers then observed HICKMAN, LEWIS and the unknown B/M travel to HICKMAN's residence located on Greentop Road, known as 9008 Green Top Road, where HICKMAN was observed entering the residence alone. HICKMAN departed the residence and re-entered the Cadillac with LEWIS and the third B/M. Law Enforcement Officers observed the Cadillac travel to a shopping plaza located in Georgetown, Delaware where your affiant observed the Cadillac park and appear to be waiting for someone. Law Enforcement Officers observed a brown pick-up truck arrive after a period of time. HICKMAN was observed exiting his Cadillac and opening the passenger door of the pick-up truck. HICKMAN was observed handing the sole occupant of the pick-up an object and the driver in turn handed HICKMAN a package. HICKMAN re-entered the Cadillac and after a short period of time the Cadillac was observed departing the parking lot. Your affiant requested Georgetown Police Department stop the Cadillac. Law Enforcement Officers observed the Cadillac travel north on Rt 113 and observed a marked Georgetown Police vehicle activate their emergency equipment. Law Enforcement Officers observed the Cadillac fail to yield and a pursuit ensued. The Cadillac eventually came to a stop on Donavan Road Georgetown, Delaware and HICKMAN elited from the vehicle. HICKMAN was caught and arrested after a brief foot pursuit. During the foot pursuit, officers observed HICKMAN throw a bag. Law Enforcement Officers recovered the bag and located over 70 grams of suspected cocaine. Your affiant interviewed HICKMAN and learned HICKMAN was not employed.

10. Your affiant field tested the suspected cocaine utilizing a reagent field test kit for the presumptive identification of controlled substances. Your affiant noted a positive result for the presence of cocaine, schedule II, Controlled Substance.

11. During the month of July, 2005, your affiant conducted surveillance of HICKMAN's residence on Greentop Road. Your affiant observed HICKMAN at the residence.

12. During the month of August, 2005, "A" advised your affiant that HICKMAN had posted bail and was released from jail. "A" further related to your affiant that HICKMAN was still involved in the distribution of cocaine. "A" stated that HICKMAN had changed the way he distributed cocaine. "A" stated HICKMAN no longer utilized his packaging/sales trailer in "The Hole" but now HICKMAN was selling cocaine from his Greentop Road residence. "A" advised that HICKMAN moved into the double wide trailer located at the same location. "A" stated that HICKMAN continued to store proceeds from his drug sales inside his Green Top Road residence.

13. During the month of September, 2005, "A" advised your affiant that HICKMAN was still distributing cocaine from his Greentop Road residence. "A" advised that HICKMAN had invested proceeds from drug sales in other properties/real estate in the Greentop Road and Ellendale, Delaware area. "A" further advised HICKMAN had made purchases of expensive items for his residence at Greentop Road to include a gazebo type addition and deck that HICKMAN was in the process of adding to his double wide trailer on Greentop Road. "A" advised your affiant that HICKMAN was not employed and had no known source of employment other than selling cocaine.

14. During the week beginning September 14, 2005, Your affiant traveled to 9008 Greentop Road. Your affiant observed construction taking place in the rear of the residence. Your affiant observed what appeared to be a gazebo and decking being added to the residence. Your affiant also observed a pick-up truck operated by HICKMAN parked in the rear of the residence.

WHEREFORE, THIS AFFIANT PRAYS THAT A SEARCH WARRANT MAY BE ISSUED AUTHORIZING A SEARCH OF THE AFORESAID HOUSE, PLACE CONVEYANCE, PERSON OR PERSONS, OR OCCUPANTS IN THE MANNER PROVIDED BY LAW.

_____
AFFIANT

SWORN TO (OR AFFIRMED) AND SUBSCRIBED BEFORE ME THIS ___ DAY OF September, 2005.

_____
JUDGE

## EXHIBIT A (Property to be seized)

1. Books, records, receipts, notes, ledgers and other papers relating to the transportation, ordering, purchase and distribution of controlled substances, in particular, cocaine, marihuana and other Controlled Dangerous Substances;

2. Papers, tickets, notes, receipts and other items relating to domestic and international travel;

3. Books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier checks, bank checks, safe deposit box keys, money wrappers, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or store expenditure of money;

4. Electronic equipment, such as computers, telex machines, facsimile machines, currency counting machines, telephone answering machines, related manuals used to generate, transfer, count, record and/or store information described in items 1, 2, 3 and 5 of this exhibit. Additionally, computer software, tapes, discs, audio tapes, and the contents therein, containing the information generated by the aforementioned electronic equipment;

5. United States Currency, precious metals, jewelry, and financial instruments, including stocks and bonds;

6. Photographs, including still photos, negatives, video tapes, films, undeveloped film and the contents therein, slides, in particular photographs of co-conspirators, of assets and/or controlled dangerous substances;

7. Address and/or telephone books, Rolodex indexes and any papers reflecting names, addresses, telephone numbers, pager numbers, fax numbers and/or telex numbers of co-conspirators, sources of supply, customers, financial institutions and other individuals or business's with whom a financial relationship exists;

8. Indicia of occupancy, residency, rental and/or ownership of the premises described herein, including, but not limited to utility and telephone bills, canceled envelopes, rental purchase and or lease agreements and keys;

9. Firearms, ammunition, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine-guns and other weapons, and any records or receipts pertaining to firearms and ammunition;

10. Coca leaves, including cocaine and ecgonine and their salts, isomers, derivatives and the salts of isomers and derivatives, and any salt, compound, derivative or preparation of coca leaves, and any salt, compound, derivative or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions which do not contain cocaine or ecgonine.

### Declaration of Ronald Marzec

1.    My name is Ronald Marzec.  I have been a detective with the Delmar, Delaware Police Department since January, 1994.  However, from July 9, 1997, until the present, I was designated a Task Force Officer with the federal Drug Enforcement Administration ("DEA").

2.    I submit this declaration in support of my motion for summary judgment in the matter of *Hickman v. Marzec*, Consol. C. A. Nos. 05-811 & 05-839 (D. Del.).

3.    In the spring and summer of 2005, in my capacity as a DEA Task Force Officer, I participated in an investigation into possible illegal narcotics dealing by Steve Hickman.

4.    In connection with the Hickman investigation, on numerous occasions I conducted surveillance of a trailer located at 9008 Greentop Road in Sussex County, Delaware. I observed Hickman and Tawanda Weatherspoon enter and leave that trailer on numerous occasions.  To the best of my knowledge and belief, Hickman and Weatherspoon resided in the trailer located at 9008 Greentop Road in Sussex County, Delaware.

5.    In connection with the Hickman investigation, I signed an affidavit in support of a search warrant for the trailer located at 9008 Greentop Road in Ellendale, Sussex County, Delaware.

6.    While I was preparing that search warrant, I entered Hickman's and Weatherspoon's name into the Delaware Criminal Justice Information System computer to determine their listed address.  The computer indicated that Hickman lived at an address that I knew was not the 9008 Greentop Road location.  The computer indicated that Weatherspoon lived at a rural route address in Ellendale, Delaware.

7.    Upon information and belief, a few years ago Delaware stopped using rural route addresses for many residences in Sussex County and replaced those addresses with street names.

# EXHIBIT D

## Declaration of Thomas Jacobs

1.    My name is Thomas Jacobs. From March, 1990 until the present, I have been employed as a Special Agent with the federal Drug Enforcement Administration ("DEA").

2.    I submit this declaration in support of my motion for summary judgment in the matter of *Hickman v. Marzec*, Consol. C. A. Nos. 05-811 & 05-839 (D. Del.).

3.    On September 21, 2005, in my capacity as a DEA Special Agent, I helped execute a search warrant to search the residence of Steve Hickman which was a trailer located at 9008 Greentop Road in Sussex County, Delaware, and seized several items. During the search I was accompanied by, among others, the Ellendale Police Chief.

4.    At the time of the search, I had no reason to believe that the search warrant was incorrect when it stated that Hickman lived in Ellendale, Delaware.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated this 27th day of March, 2006.

Thomas Jacobs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STEVE HICKMAN, | : | |
| | : | |
| Plaintiff, | : | CONSOLIDATED |
| | : | Civil Action No. 05-811-KAJ |
| v. | : | Civil Action No. 05-839-KAJ |
| | : | |
| DETECTIVE MARZEC, in his | : | |
| individual and official capacity, | : | |
| DAVID HUME IV, TOWN OF | : | |
| DELMAR, DEPARTMENT | : | |
| OF DRUG ENFORCEMENT, | : | |
| and AGENT TOM JACOBS, | : | |
| | : | |
| Defendants. | : | |

**ORDER**

AND NOW, this _____ day of _____, 2006, upon consideration of Defendants

Marzec's and Jacobs's Motion to Dismiss Or, In the Alternative, for Summary Judgment, and all

papers filed in support thereof and opposition thereto, it is ORDERED that Plaintiff's

Complaints in Civil Actions Nos. 05-811-KAJ and 05-839-KAJ are dismissed with prejudice.


_____
United States District Judge