**EXHIBIT "3"**

Service: **Get by LEXSEE®**
Citation: **128 Fed. Appx. 910**

*128 Fed. Appx. 910, \*; 2005 U.S. App. LEXIS 7132, \*\**

KEVIN E. BROWN; ERICA BROWN, Appellants v. TINA DANIELS; BRANDY NEIDER; BERKS COUNTY CHILDREN AND YOUTH SERVICES

No. 04-3664

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

128 Fed. Appx. 910; 2005 U.S. App. LEXIS 7132

April 4, 2005, Submitted Under Third Circuit LAR 34.1(a)
April 25, 2005, Filed

**NOTICE:** [\*\*1] RULES OF THE THIRD CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Motion denied by Brown v. Daniels, 2006 U.S. Dist. LEXIS 45274 (E.D. Pa., June 15, 2006)

**PRIOR HISTORY:** On Appeal From the United States District Court For the Eastern District of Pennsylvania. (D.C. Civ. No. 03-cv-04242). District Judge: Honorable Petrese B. Tucker.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Appellant parents challenged the dismissal of their 42 U.S.C.S. § 1983 action against appellees, children and youth agency, an employee, and a supervisor, from the U.S. District Court for the Eastern District of Pennsylvania because they failed to state a claim for violations of their due process rights or of the Child Protective Services Law, 23 Pa. Cons. Stat. Ann. § 6301 et seq., and appellees were entitled to qualified immunity.

**OVERVIEW:** The parents first argued that the district court erred in considering materials outside of the pleadings when it granted appellees' Fed. R. Civ. P. 12(b)(6) motion to dismiss. The court disagreed. The district court only relied upon those documents that were a matter of public record or were integral to the parents' claims and that by relying upon the documents themselves, the parents had notice that they would be considered. The court affirmed the dismissal of the parents' claims against the supervisor and the agency because the complaint contained no allegation of the supervisor's involvement but attempted to hold her responsible because of her supervisory position. With regard to the agency, the complaint failed to identify established customs or policies that resulted in the violations. The parents' claims that the employee violated their rights by examining the child for bruises, notifying the father's employer of the abuse allegations, and harassing them "during the healing process" were properly dismissed because the employee's actions did not shock the conscience. The parents sufficiently alleged a violation of their procedural due process rights against the employee.

**OUTCOME:** The court vacated the district court's judgment as to the parents' procedural due process claim against the employee. The court affirmed the district court's judgment in favor of all appellees as to the remainder of the claims.

**CORE TERMS:** post-deprivation, motion to dismiss, qualified immunity, custody, protective custody, prompt, notifying, emergency, removal, maternal grandmother, informal hearing, due process, conscience, approving, quotation, healing, notice, shocks, juvenile, thighs, affirmative defense, judicial review, collectively, involvement, conclusory, whereabouts, harassing, integral, custom, vacate

## LexisNexis(R) Headnotes ◆ Hide Headnotes

Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation
**HN1** Conclusory allegations are simply insufficient to state a claim. More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims
**HN2** A court need not credit a complaint's bald assertions or legal conclusions when deciding on a motion to dismiss. More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims
Civil Procedure > Appeals > Standards of Review > De Novo Review
**HN3** An appellate court's standard of review of a district court's dismissal under Fed. R. Civ. P. 12(b)(6) is plenary. The court of appeals must determine whether, under any reasonable reading of the pleadings, the plaintiffs may be entitled to relief, and we must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom. More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims
**HN4** In deciding motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts generally consider only allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. A document forms the basis of a claim if it is integral to or explicitly relied upon in the complaint. More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims
Civil Procedure > Dismissals > Involuntary Dismissals > Failures to State Claims
**HN5** A Fed. R. Civ. P. 12(b)(6) defense for failure to state a claim may be raised in a pre-answer motion. R. 12(b). More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims
**HN6** See Fed. R. Civ. P. 12(a)(4)(A).

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims
**HN7** If a district court grants a motion to dismiss, the plaintiff's action is dismissed and an answer is no longer required. More Like This Headnote

Civil Procedure > Appeals > Standards of Review > General Overview
**HN8** A court of appeals may affirm a district court on any grounds supported by the record. More Like This Headnote

Civil Rights Law > Immunity From Liability > Local Officials > General Overview
Civil Rights Law > Immunity From Liability > Respondeat Superior Distinguished
Civil Rights Law > Section 1983 Actions > Scope
**HN9** Liability in a 42 U.S.C.S. § 1983 action must be predicated upon personal involvement, not on the basis of respondeat superior. In order to establish liability on the part of a government agency, plaintiffs would have to show that it had an

established policy or custom that resulted in the alleged constitutional violations. More Like This Headnote

    Criminal Law & Procedure > Criminal Offenses > Crimes Against Persons > Domestic Offenses > Child Abuse > Elements
    Family Law > Family Protection & Welfare > Children > Abuse, Endangerment & Neglect
    Governments > Federal Government > Executive Offices

HN10± Parents have a liberty interest in the care, custody, and management of their children. This interest, however, must be balanced against the state's interest in protecting children suspected of being abused. The right to familial integrity, in other words, does not include a right to remain free from child abuse allegations. In cases where abusive action by a member of the executive branch is alleged, only the most egregious official conduct can be said to be arbitrary in the constitutional sense. Thus, to generate liability, the executive action alleged must be so "ill-conceived or malicious" that it "shocks the conscience." More Like This Headnote

    Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection
    Family Law > Family Protection & Welfare > Children > General Overview
    Family Law > Parental Duties & Rights > Consent > General Overview

HN11± In emergency circumstances, which pose an immediate threat to the safety of a child, officials may temporarily deprive a parent of custody without parental consent or an order of the court. However, in those extraordinary situations where deprivation of a protected interest is permitted without prior process, the constitutional requirements of notice and an opportunity to be heard are not eliminated, but merely postponed. Thus, when the state removes a child from his parents, due process guarantees prompt and fair post-deprivation judicial review. More Like This Headnote | *Shepardize:* Restrict By Headnote

    Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection
    Family Law > Family Protection & Welfare > Children > General Overview

HN12± The requirements of due process may be delayed where emergency action is necessary to avert imminent harm to a child, provided that post-deprivation process to ratify the emergency action is promptly accorded. More Like This Headnote

    Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection
    Family Law > Family Protection & Welfare > Children > General Overview

HN13± Although there is no bright-line rule for deciding whether a post-deprivation hearing involving the removal of a child from the parents is sufficiently "prompt," the delay should ordinarily be measured in hours and days, as opposed to weeks. More Like This Headnote

    Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses
    Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims
    Civil Rights Law > Immunity From Liability > Local Officials > Customs & Policies

HN14± Although qualified immunity is an affirmative defense, a complaint may be subject to dismissal under Fed. R. Civ. P. 12(b)(6) when an affirmative defense appears on its face. Thus, qualified immunity will be upheld on a R. 12(b)(6) motion only when the immunity is established on the face of the complaint. More Like This Headnote

    Civil Rights Law > Immunity From Liability > Local Officials > Customs & Policies

HN15± Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional laws

of which a reasonable person would have known. A right may be clearly established even if there is no previous precedent directly in point. The ultimate issue is whether reasonable officials in the defendants' position at the relevant time could have believed that, in light of what is in the decided case law, that their conduct would be lawful.  More Like This Headnote

**COUNSEL:** KEVIN E. BROWN; ERICA BROWN, Appellants, Pro se, Reading, PA.

For TINA DANIELS; BRANDY NEIDER; BERKS COUNTY CHILDREN AND YOUTH SERVICES, Appellees: Paola T. Kaczynski, Holsten & Associates, Media, PA.

**JUDGES:** BEFORE: ALITO, SMITH and BECKER, CIRCUIT JUDGES.

**OPINION:**

[*911] PER CURIAM

Kevin Brown and Erika Brown (collectively, "the Browns") appeal pro se from the order of the United States District Court for the Eastern District of Pennsylvania dismissing their action filed pursuant to 42 U.S.C. § 1983. For the reasons that follow, we will affirm in part and vacate in part the District Court's judgment.

[*912] Because we write only for the parties, we will briefly summarize only those facts essential to our disposition of this appeal. On May 21, 2003, the Browns' minor child, Travonne Lydell Wilson, was removed from their home by [**2] his maternal aunt, Catherine Smith. Smith then transported Travonne to Berks County Children and Youth Services ("BCCYS"), where he was interviewed and examined by BCCYS employee, Tina Daniels. At that time, Daniels, who had received a report that Travonne was being physically abused by Kevin Brown, observed multiple bruises on Travonne's upper rear thighs. According to the Browns, Daniels then contacted them at work, advised them that Travonne had been placed with his maternal grandmother pursuant to Pennsylvania state law, and that they should "stay away" from Travonne until the completion of her investigation. Approximately one week later, Daniels notified the Browns in writing of the alleged physical abuse report. It is unclear from the record what transpired until July 9, 2003, when a Juvenile Court hearing was conducted. At the July 9 hearing, the Juvenile Court directed the family to begin counseling, and ordered Travonne to "remain in residence with his grandmother under protective supervision of [BCCYS]."

On August 11, 2003, the Browns filed the underlying complaint in the District Court for the Eastern District of Pennsylvania. The Browns alleged that Daniels, Supervisor [**3] Brandy Neider and BCCYS (collectively, "the appellees") violated their substantive due process rights by examining Travonne; notifying Kevin Brown's employer of the abuse allegations; and harassing them "during the healing process." The Browns further alleged that the appellees violated their procedural due process rights by removing Travonne from their home without a court order or hearings as required by Pennsylvania law. n1 The Browns sought punitive and compensatory damages for their "mental anguish and physical suffering." The appellees filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). n2 On August 13, 2004, the District Court granted the motion to dismiss, determining that the Browns had failed to state a claim alleging violations of their due process rights or of the Child Protective Services Law, 23 Pa.C.S.A. § 6301 et seq., and that, in any event, the appellees were entitled to qualified immunity. This timely appeal followed.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 In their complaint, the Browns vaguely alleged that their other minor child, Trista Lynn Wilson, was "ordered to stay with" the maternal grandmother in an "unsafe environment." The Browns failed to elaborate factually or legally on this claim either in the District Court or on appeal. Such *HN1*conclusory allegations are simply insufficient to state a claim. See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) (stating that *HN2*"a court need not credit a complaint's bald assertions or legal conclusions when deciding on a motion to dismiss") (internal quotations omitted). Accordingly, the District Court properly dismissed the Browns' claims to the extent that they related to Trista. [**4]

n2 Thereafter, the appellants filed a motion for leave to amend their complaint, seeking to add as defendants: juvenile court judge, Maryann Campbell; court-appointed expert, Thomas G. Baker, Ph.D.; and BCCYS caseworker, James Trump. On February 26, 2004, the District Court denied in part and dismissed without prejudice in part the appellants' motion to amend. The appellants neither challenge this ruling on appeal, nor have they provided any factual or legal support for claims against these putative defendants.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

*HN3*Our standard of review of the District Court's dismissal under Rule 12(b)(6) is plenary. See Gallo v. City of Philadelphia, 161 F.3d 217, 221 (3d Cir. 1998). "We must determine whether, under any reasonable reading of the pleadings, the [*913] plaintiffs may be entitled to relief, and we must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).

The Browns challenge two of the District Court's procedural rulings on appeal. First, the Browns argue that [**5] the District Court erred in considering materials outside of the pleadings when it granted the appellees' motion to dismiss. *HN4*"In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of America, 361 F.3d 217, 222 n. 3 (3d Cir. 2004); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted) (explaining that a document forms the basis of a claim if it is "integral to or explicitly relied upon in the complaint"). Here, the Browns attached to their reply to the appellees' motion to dismiss a number of documents, including pleadings and orders filed in the Court of Common Pleas of Berks County. In granting the appellees' motion to dismiss, the District Court relied upon several of the Browns' documents. However, the District Court only relied upon those documents which are a matter of public record or were integral to the Browns' claims. Moreover, the District Court's consideration of the documents was not unfair to the Browns [**6] because, by themselves relying upon the documents, the Browns were on notice that they would be considered. See id. Under these circumstances, we conclude that the District Court did not improperly rely upon documents submitted by the Browns. Second, the Browns argue that the District Court improperly granted the appellees' motion to dismiss without first requiring the appellees to file an answer to their complaint. *HN5*A Rule 12(b)(6) defense for failure to state a claim may be raised in a pre-answer motion. See Fed. R. Civ. P. 12(b). *HN6*"If the court denies the motion, . . . the [answer must] be served within 10 days after notice of the court's action." Fed. R. Civ. P. 12(a)(4)(A). *HN7*If, however, the District Court grants the motion, as it did here, the plaintiff's action is dismissed and an answer is no longer required. Accordingly, because the District Court granted the appellees' motion to dismiss, the appellees were not required to file an answer to the Browns' complaint.

Turning to the merits of the complaint, we will affirm the District Court's dismissal of the Browns' claims against Neider and [**7] the BCCYS, although for different reasons than those provided by the District Court. See Nicini v. Morra, 212 F.3d 798, 805 (3d Cir. 2000) (en banc) (concluding that [HN8] we may affirm the District Court on any grounds supported by the record). The Browns' complaint contains no allegation of Neider's involvement in the alleged constitutional violations, but rather attempts to hold her responsible merely because of her supervisory position within the BCCYS. It is well-established, however, that [HN9] liability in a § 1983 action must be predicated upon personal involvement, not on the basis of *respondeat superior*. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998). Likewise, in order to establish liability on the part of the BCCYS, the Browns would have to show that it had an established policy or custom that resulted in the alleged constitutional violations. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). The Browns' complaint failed to identify any such customs or policies.

The District Court also did not err in dismissing the Browns' claims that Daniels [*914] violated their rights by [**8] examining Travonne for bruises, notifying Kevin Brown's employer of the abuse allegations, and harassing them "during the healing process." [HN10] Parents have a liberty interest in the care, custody, and management of their children. See Croft v. Westmoreland County Children & Youth Servs., 103 F.3d 1123, 1125 (3d Cir. 1997). "This interest, however, must be balanced against the state's interest in protecting children suspected of being abused." Miller v. City of Philadelphia, 174 F.3d 368, 373 (3d Cir. 1999); see also Croft, 103 F.3d at 1125 ("The right to familial integrity, in other words, does not include a right to remain free from child abuse allegations."). "In cases like this, where abusive action by a member of the executive branch is alleged, 'only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'" Miller, 174 F.3d at 375 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 846, 140 L. Ed. 2d 1043, 118 S. Ct. 1708 (1998) (citation and internal quotation marks omitted)). Thus, to generate liability, the executive action alleged must be so "ill-conceived or malicious, [**9] " Miller, 174 F.3d at 375, that it "shocks the conscience." Lewis, 523 U.S. at 846.

Even if all of the facts alleged by the Browns are true, Daniels did not act in a way that shocks the conscience. The Browns do not dispute that Daniels received a report that Travonne was being physically abused by Kevin Brown, or that Travonne told Daniels that he was afraid to return home. Likewise, the Browns do not dispute that Travonne had bruising on his thighs consistent with repeatedly being hit with a belt. Under these circumstances, where Daniels had a reasonable belief that Travonne was in danger, she did not act in a way that shocks the conscience by viewing Travonne's upper thighs. Moreover, we agree with the District Court that while notifying Kevin Brown's employer about her investigation may have been "ill-advised or an exercise in poor judgment," Daniels' alleged actions do not rise to the level of a due process violation. Additionally, the Browns' conclusory allegations of harassment by Daniels "during the healing process" are insufficient to state a claim. See Morse, 132 F.3d at 906 (3d Cir. 1997).

The Browns also alleged that Daniels [**10] violated their procedural due process rights when she took Travonne into custody on May 21, 2003, without: (1) obtaining a court order; (2) notifying them in writing within 24 hours of his whereabouts; and (3) conducting an informal hearing within 72 hours, all in violation of state law. See 42 Pa.C.S.A. § 6324 (providing methods for taking child into custody) and § 6332 (requiring an informal hearing within 72 hours of the child's placement in protective custody); 23 Pa.C.S.A. § 6315(b) (providing that no child may be held in protective custody for more than 24 hours without a court order) and § 6315(c) (providing for parental notification within 24 hours of child's whereabouts). The Browns do not challenge the constitutionality of the Pennsylvania laws governing protective custody. However, they do claim that by failing to comply with the procedures required by state law, especially with regard to the 72 hour limit for holding a post-deprivation informal hearing, Daniels violated their procedural due process rights. See,

e.g., Miller, 174 F.3d at 372-374; Patterson v. Armstrong Cty. Children & Youth Services, 141 F. Supp. 2d 512, 531-540 (W.D. Pa. 2001). [**11]

It is well-settled that HN11 "in emergency circumstances which pose an immediate threat to the safety of a child, officials may temporarily deprive a parent of custody without parental consent or an order of the court." Hollingsworth v. Hill, 110 F.3d 733, 739 [*915] (10th Cir. 1997). However, "in those extra-ordinary situations where deprivation of a protected interest is permitted without prior process, the constitutional requirements of notice and an opportunity to be heard are not eliminated, but merely postponed." Suboh v. District Attorney's Office of Suffolk, 298 F.3d 81, 92 (1st Cir. 2002). Thus, "when the state removes a child from [his] parents, due process guarantees prompt and fair post-deprivation judicial review." Berman v. Young, 291 F.3d 976, 985 (7th Cir. 2002); see also Miller, 174 F.3d at 372 n. 4; Jordan v. Jackson, 15 F.3d 333, 343 (4th Cir. 1994) (noting that HN12 "the requirements of due process may be delayed where emergency action is necessary to avert imminent harm to a child, provided that post-deprivation process to ratify the emergency action is promptly accorded") (internal [**12] citations omitted).

HN13 Although there is no bright-line rule for deciding whether a post-deprivation hearing is sufficiently "prompt," the delay should ordinarily be measured in hours and days, as opposed to weeks. See Tower v. Leslie-Brown, 326 F.3d 290, 299 (1st Cir. 2003) (approving a post-deprivation hearing that occurred three days after children were removed from parents' home where child protective worker sought ex parte review of the removal decision within hours of the removal); Berman, 291 F.3d at 985 (concluding that a 72-day delay in the proceedings was "rather outrageous," but finding no actual damages resulting from the delay in the post-deprivation hearing); Whisman v. Rinehart, 119 F.3d 1303, 1310 (8th Cir. 1997) (concluding that under the facts before it, a hearing held 17 days after the state had taken custody was not "prompt"); Jordan, 15 F.3d at 351 (concluding that a 65-hour delay in judicial review of an emergency removal was constitutionally permissible, but that the 65-hour period was "near, if not at, the outer limit of permissible delay"); Cecere v. City of New York, 967 F.2d 826, 829-30 (2d Cir. 1992) [**13] (approving a 4 day delay); Lossman v. Pekarske, 707 F.2d 288, 290 (7th Cir. 1983) (approving a post-deprivation hearing that occurred 12 days after the state took custody, but noting that the hearing would have taken place earlier had the parents not requested additional time to prepare).

Assuming all of the Browns' allegations to be true, as we must, Travonne was placed in protective custody with his maternal grandmother without a court order on May 21, 2003. However, based upon the sparse record on appeal, it appears that post-deprivation proceedings may not have been conducted until July 9, 2003, approximately seven weeks after Travonne was placed with his maternal grandmother. Without commenting on the ultimate merits of the claim, we conclude that, on this record, the Browns sufficiently alleged a violation of their procedural due process rights against Daniels.

Finally, on this record we cannot conclude that Daniels is entitled to the defense of qualified immunity. HN14 Although qualified immunity is an affirmative defense, "a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense appears on its face. Thus, qualified immunity will [**14] be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001) (quotations and citations omitted). HN15 Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional laws of which a reasonable person would have known." Harlow v. Fitzgerald, [*916] 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982). A right may be clearly established even if there is no "previous precedent directly in point." Good v. Dauphin County Soc. Servs. for Children & Youth, 891 F.2d 1087, 1092 (3d Cir. 1989) (denying qualified immunity and citing case law from other jurisdictions). "The ultimate issue

is whether . . . reasonable officials in the defendants' position at the relevant time could have believed that, in light of what was in the decided case law, that their conduct would be lawful." Id. Accepting the allegations in the complaint as true and drawing all inferences in the Browns' favor, a reasonable [**15] BCCYS employee could not have believed that a post-deprivation hearing conducted seven weeks after the removal of a child from his parents' home complied with due process. See, e.g., Miller, 174 F.3d at 372 n. 4 (explaining that initiating child custody proceedings by ex parte order is generally constitutional *if* a prompt post-deprivation hearing is held, and noting Pennsylvania's 72 hour requirement); see also Patterson, 141 F. Supp. 2d at 540-42 (rejecting qualified immunity defense where defendants failed to provide plaintiffs with a prompt and adequate judicial hearing within 72 hours of taking child into protective custody).

Accordingly, we will vacate the District Court's August 13, 2004, judgment as to the Browns' procedural due process claim against Daniels. We will affirm the District Court's judgment in favor of all the appellees as to the remainder of the claims.

Service: **Get by LEXSEE®**
Citation: **128 Fed. Appx. 910**
View: Full
Date/Time: Tuesday, May 8, 2007 - 5:13 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
▣ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
✚ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.



About LexisNexis | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.