IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STEVE HICKMAN, TAWANDA ) WEATHERSPOON, and SANDRA ) J. WHITE, ) ) Plaintiffs, ) ) v. ) ) DETECTIVE MARZEC, in his ) individual and official capacity, ) TOWN OF DELMAR, AGENT ) TOM JACOBS, MARVIN ) MAILEY, and CITY OF DOVER, ) DELAWARE, ) ) Defendants. ) | CONSOLIDATED Civil Action No. 05-811-GMS Civil Action No. 05-839-GMS |
| SANDRA V. WHITE, ) ) Plaintiff, ) ) v. ) ) DETECTIVE MARZEC, AGENT ) TOM JACOBS, and AGENT ) CHRIS QUAGLINO, ) ) Defendants. ) | Civil Action No. 06-008-GMS |
| TWANDA WEATHERSPOON, ) ) Plaintiff, ) ) v. ) ) DETECTIVE MARZEC, AGENT ) TOM JACOBS, and AGENT ) CHRIS QUAGLINO, ) ) Defendants. ) | Civil Action No. 06-009-GMS |

**MEMORANDUM**

## I. BACKGROUND

The plaintiffs filed four separate civil rights actions pursuant to 42 U.S.C. § 1983.

Pending before the court are several motions, including motions to dismiss, or in the alternative,

for summary judgment filed by the defendants Ronald Marzec ("Marzec"), Tom Jacobs

("Jacobs"), Cris Quaglino ("Quaglino"), and the Town of Delmar ("Delmar"); motions for

joinder filed by the plaintiffs Sandra J. White ("White") and Steve Hickman ("Hickman"); and

motions for summary judgment filed by the plaintiffs Hickman, Tawanda Weatherspoon

("Weatherspoon"), and White.[1]  (Consolidated Civ. No. 05-811-GMS, D.I. 15, 25, 26, 32, 62, 70;

Civ. No. 06-008-GMS, D.I. 14, D.I. 21; Civ. No. 06-009-GMS, D.I. 14.)

The plaintiffs, Hickman, White, and Weatherspoon, all whom proceed *pro se* and all of

whom were granted leave to proceed *in forma pauperis*, filed separate lawsuits arising out of the

same events occurring on September 21, 2005. *See Hickman v. Marzec*, Civ. No. 05-811-GMS;

*Hickman v. Marzec*, Civ. No. 05-839-GMS; *White v. Marzec*, Civ. No. 06-008-GMS;

*Weatherspoon v. Marzec*, Civ. No. 06-009-GMS. As a result of an order entered July 24, 2006

(Civ. No. 05-811-GMS, D.I. 40), the four actions were consolidated with Civ. No. 05-811-GMS

serving as the lead consolidated case number. According to the various complaints and

amendments, Hickman was arrested on September 21, 2005, by Marzec, Jacobs, and Quaglino

for possession with intent to deliver a controlled substance.[2]  A search warrant was issued to

---

[1]The cases were originally assigned to former U.S. District Judge Kent A. Jordan. Upon his elevation to the U.S. Court of Appeals for the Third Circuit, the cases were reassigned to the Vacant Judgeship. On February 1, 2008, the cases were reassigned to Chief District Judge Gregory M. Sleet.

[2]The amended complaint, found at D.I. 45 adds as defendants Marvin Mailey ("Mailey") and the City of Dover, Delaware ("Dover"), but have not been served. (Consolidated Civ. No.

search Weatherspoon's home. The search resulted in the seizure of paperwork, receipts, and the title to a Dodge Durango, property claimed by Weatherspoon. Hickman asserts that the search resulted in the seizure of his cash in the amount of $12,900, numerous receipts, and records and his cell phone.[3] The plaintiffs claim that the search warrant was invalid. Hickman claims that all items seized were improperly turned over to the Drug Enforcement Administration ("DEA") because the DEA was not prosecuting Hickman.

Weatherspoon is Hickman's fiancé, and White is Weatherspoon's mother. At the time of the search, White was at the Weatherspoon home. White claims that at the time of the search, she was approached by several men who failed to identify themselves as police officers, a gun was pointed in her face, and she was patted down. All claim that the search and seizure was illegal, without probable cause, in part because the description of the residence to be searched was for a residence in Ellendale, while Weatherspoon claims that she lives in Lincoln. Also, the plaintiffs claim that the trailer described in the search warrant did not match Weatherspoon's home, either in size or color. All the plaintiffs claim violations of their Fourth Amendment rights, alleging unreasonable search and seizure, denial of due process, and equal protection. They seek injunctive relief, and compensatory damages and punitive damages due to emotional distress as a result of the alleged events.

---

05-811-GMS, D.I. 45.) The second amended complaint, found at D.I. 49, was stricken by the court on January 10, 2007. (Consolidated Civ. No. 05-811-GMS, D.I. 54 at 8-9.)

[3]Prior to consolidation of the cases, Hickman filed a petition for return of property in Civ. No. 05-839-GMS, denied by the court in the consolidated case on February 1, 2006. (Consolidated Civ. No. 05-811-GMS, D.I. 5.) In the same order, the court dismissed all claims filed against the DEA and the state prosecutor by reason of immunity. (*Id.*) Pending in this court is a related civil forfeiture action, *USA v. One 1999 Dodge Durango,* Civ. No. 06-262-GMS.

## II. DISCUSSION

### A. Motion for Default Judgment

Hickman moves for summary judgment against Delmar, arguing that it had "more than enough time to either deny or accept" the claims he has presented. (Consolidated Civ. No. 05-811-GMS, D.I. 25.) The court construes this motion as one seeking default.

Entry of default judgment is a two-step process. Fed. R. Civ. P. 55(a), (b). A party seeking to obtain a default judgment must first request that the clerk of the court "enter . . . the default" of the party that has not answered the pleading or "otherwise defend[ed]," within the time required by the rules or as extended by court order. Fed. R. Civ. P. 55(a). Timely serving and filing a motion to dismiss under Fed. R. Civ. P. 12(b), precludes entry of default. *See Francis v. Joint Force Headquarters Nat'l Guard*, Civ. No. 05-4882(JBS), 2006 WL 2711459 (D.N.J. Sept. 19, 2006), *vacated in part on other grounds*, 247 Fed Appx. 387 (3d Cir. 2007). Even if default is properly entered, the entry of judgment by default pursuant to Rule 55(b)(2) is within the discretion of the trial court. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).

The record reflects that Delmar was served on February 9, 2006, and it submitted a waiver of service dated May 4, 2006. (Consolidated Civ. No. 05-811-GMS, D.I. 23.) The waiver was entered on the docket on May 5, 2006. On May 31, 2006, Hickman filed the motion for default, and one week later, Delmar filed a motion to dismiss. (*Id.* at D.I. 25, 26.) While belatedly filed, Delmar has appeared and is "otherwise defending" the claims filed against it. Accordingly, the court exercises its discretion and will deny Hickman's motion. (*Id.* at D.I. 25.)

-4-

## B. Motions to Dismiss

Delmar moves for dismissal of the original consolidated complaints on the basis that the arrest and seizure at issue were conducted pursuant to DEA training, supervision, and authorization and, therefore, cannot be attributed to Delmar. (Consolidated Civ. No. 05-811-GMS, D.I. 26.) Delmar also filed a motion to dismiss the plaintiffs' second amended complaint for the same reasons.[4] (Consolidated Civ. No. 05-811-GMS, D.I. 70, 71.) In both motions, Delmar relies upon the pleadings and exhibits filed by Marzec, Jacobs, and Quaglino to support its position that dismissal is appropriate. Hickman objects to dismissal and, like Delmar, submits documents outside the pleadings in support of his opposition. (D.I. 28.) He also asks that his response be considered as a motion for summary judgment. (*Id.*) The court declines to do so.

The Federal Rules of Civil Procedure provide that when a motion to dismiss is filed pursuant to Rule 12(b)(6) and matters outside the pleadings are presented to and not excluded by the court, the matter shall be treated as one for summary judgment and disposed of as provided in Fed. R. Civ. P. 56. Fed. R. Civ. P. 12(b); *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. *Id.* (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). A document forms the basis of a claim if the document is "integral to or explicitly relied upon in the complaint." *Id.* (citation omitted). Considering such

---

[4]As previously noted, the second amended complaint, found at D.I. 49, was stricken by the court on January 10, 2007. (Consolidated Civ. No. 05-811-GMS, D.I. 54 at 8-9.)

a document is not unfair to a plaintiff because, by relying on the document, the plaintiff is on notice that the document will be considered. *Id.* (citation omitted). It is apparent that the search warrant at issue forms the basis of the plaintiffs' claims. Indeed, it is explicitly relied upon in the complaints. Accordingly, in ruling on the motions to dismiss the court will consider the search warrant and its affidavit and application. The court, however, will not consider any other documents or affidavits submitted by Marzec, Jacobs, and Quaglino, including the DEA notices of seizure, and will not convert Delmar's motions to dismiss to motions for summary judgment.[5]

Marzec, Jacobs, and Quaglino also filed motions to dismiss. They argue that Weatherspoon's and White's averments of unreasonable search, seizure and unlawful detention at gunpoint and with handcuffs, fail to state a claim upon which relief may be granted and, therefore, must be dismissed.[6] (Civ. No. 06-008-GMS, D.I. 14; Civ. No. 06-009-GMS, D.I. 14.) White and Weatherspoon respond that the search should never have taken place and that the defendants acted with malicious intent, and not in good-faith or as well-trained and well-supervised policemen. (Civ. No. 06-008-GMS, D.I. 16; Civ. No. 06-009-GMS, D.I. 19.)

## 1. Standard of Review

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiffs. *Erickson v. Pardus*, –U.S.–, 127 S.Ct. 2197, 2200 (2007); *Christopher v. Harbury*, 536 U.S. 403,

---

[5]The DEA's notices of seizure were mailed to Weatherspoon on December 22, 2005, a date after the filing of the original complaints in Civ. Nos. 05-811-GMS and 05-839-GMS.

[6]The court will not at this time address the remaining issues raised by Marzec, Jacobs, and Quaglino. They will be discussed in the summary judgment section of this Memorandum.

406 (2002). A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, –U.S.–, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); Fed. R. Civ. P. 8. A complaint does not need detailed factual allegations, however "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). The plaintiff is required to make a "showing" rather than a blanket assertion of an entitlement to relief. *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests. *Id.* (citing *Twombly*, 127 S.Ct. at 1965 n.3). Therefore, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Phillips v. County of Allegheny*, *Id.* at 235 (quoting *Twombly*, 127 S.Ct. at 1965 n.3). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Id.* at 234. Because the plaintiffs proceed *pro se*, their pleadings are liberally construed and their complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, –U.S.–, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

-7-

## 2. Municipal Liability

The allegations against Delmar are as follows: Delmar's improper training, supervision, and authorization of several police officers caused violations of the plaintiffs' Fourth Amendment rights. (Consolidated Civ. No. 05-811-GMS, D.I. 2.) It is the common policy of Delmar to allow certain officers to work undercover with the DEA, but the officers: (a) are Delmar employees, (b) utilize Delmar's badge of authority, and (c) while working DEA operations use Delmar's badge of authority to obtain warrants, make arrests and file court documents using Delmar's police department as the arresting agency. (Consolidated Civ. No. 05-811-GMS, D.I. 45; Civ. No. 06-008-GMS, D.I. 25.) The foregoing is "done with 'full' knowledge, understanding and authorization by Delmar and it is wholly responsible for damages" claimed by the plaintiff. (*Id.*) Delmar allows its police chief to participate in DEA search and seizures. (*Id.*) Delmar failed to train and supervise officers Marzec and Mailey, as well as fellow officers participating in covert DEA actions. (*Id.*) Had Delmar properly trained its officers, the officers would have known that policemen do not conduct a search and seizure at a location that is not authorized by the search warrant, at a location a judge did not authorize, and would know the difference between the locations of Lincoln, Delaware and Ellendale, Delaware. (*Id.*)

The search warrant states that Marzec is a task force officer. (D.I. 29, ex. C-1.) The affidavit and application in support of the search warrant state that Marzec is a detective/task force officer with the Delmar Police Department/United State's Department of Justice DEA. (*Id.* at C-2.) It goes on to state that Marzec is currently assigned to the DEA Task Force. (*Id.* at C-3.)

A municipality may only be held liable under § 1983 when the "execution of a government's policy or custom . . . inflicts the injury." *Andrews v. City of Philadelphia,* 895 F.2d

-8-

1469, 1480 (3d Cir. 1990). While a government policy is established by a "decisionmaker possessing final authority," a custom arises from a "course of conduct . . . so permanent and well settled as to virtually constitute law." *Andrews,* 895 F.2d at 1480 (citing *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)). Accordingly, a plaintiff seeking to recover from a municipality must (1) identify an allegedly unconstitutional policy or custom, (2) demonstrate that the municipality, through its deliberate and culpable conduct, was the "moving force" behind the injury alleged; and (3) demonstrate a direct causal link between the municipal action and the alleged deprivation of federal rights. *Board of the County Comm'rs v. Brown,* 520 U.S. 397, 404 (1997). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

The subject of the combined cases, to wit, the incorrect address and trailer description contained in the search warrant, the execution of the search warrant, and seizure of items, when viewed in toto, are all merely distinct aspects of a single incident. As such, the incident complained of is legally insufficient to establish a "policy or practice" sufficient to render a municipality liable under §1983. *See Oklahoma City v. Tuttle, supra*. Furthermore, the plaintiffs claims of improper supervision, training, and authorization fail to state a claim. Instead, the complaints contain blanket assertions of entitlement to relief. Additionally, for liability to lie against Delmar, there must be an "affirmative link between the occurrence of the various incidents of police misconduct and the adoption of any plan or policy by [Delmar] - express or otherwise - showing [its] authorization or approval of such misconduct." *Rizzo v. Goode*, 423

U.S. 362, 371 (1976). The plaintiffs' allegations are merely conclusory and fail to make the requisite showing. Therefore, the court will grant Delmar's motions to dismiss. (Consolidated Civ. No. 05-811-GMS, D.I. 26, 70.) The court will deny the plaintiffs' motion for summary judgment on the same issue. (*Id.* at 62.)

The plaintiffs raise identical claims against Dover. The claims against Dover fail for the same reasons as the claims raised against Delmar. Accordingly, the court, *sua sponte*, dismisses the claims against Dover for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e )(2)(B) (In proceedings where a plaintiff proceeds *in forma pauperis*, the court shall dismiss a case at any time if the court determines that allegations fail to state a claim upon which relief may be granted.

### 3. Unreasonable Detention and Use of Force

White alleges that on September 21, 2005, she was approached by several men who did not identify themselves as police officers, pointed a loaded gun at her, made her stand, patted her down, and handcuffed her. (Civ. No. 06-008-GMS, D.I. 2.) In her amended complaint White alleges that she was handcuffed and a gun was pointed in her face. (*Id.* at D.I. 25.) None of the complaints in the combined cases make mention of Weatherspoon being handcuffed or having a gun pointed at her. Marzec, Jacobs, and Quaglino argue that the foregoing claims fail to state a claim upon which relief may be granted, relying upon the holding in *Muehler v. Mena*, 544 U.S. 93, 98-99 (2005). Alternatively, they argue that they are entitled to qualified immunity because at the time of the search no precedent existed to clearly establish that their alleged conduct was unconstitutional.

Weatherspoon has not alleged unlawful detention or excessive force in any of the complaints file with the court. Accordingly, the court will grant the motion to dismiss any such claims. White, however, specifically alleges that at the time of the search she was handcuffed and a gun was pointed in her face.

Officers executing a search warrant for contraband have the authority "to detain the occupants of the premises while a proper search is conducted." *Michigan v. Summers*, 452 U.S. 692, 705 (1981). "Inherent in *Summers'* authorization to detain an occupant of the place to be searched, is the authority to use reasonable force to effectuate the detention. *Muehler v. Mena*, 544 U.S. 93, 98-99 (2005) (citing *Graham v. Connor,* 490 U.S. 386, 396 (1989) ("Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it"). The Supreme Court has held that the use of force in the form of handcuffs to effectuate detention of multiple individuals is reasonable because the governmental interests outweigh the marginal intrusion. *Id.* (citing *Graham*, 490 U.S. at 396-397). Moreover, the execution of a warrant to search for drugs "may give rise to sudden violence or frantic efforts to conceal or destroy evidence." *Summers*, 452 U.S. at 702-703. Here, three individuals were present at the time the search warrant was executed and the search warrant explicitly authorized a search for drugs. Accordingly, the court finds that, in light of the facts alleged in the consolidated cases, with regard to the issue of unlawful detention, White has failed to state a claim upon which relief may be granted.

White also alleges, however, that when the warrant was executed a loaded gun was pointed in her face, and as a result she was abused and suffered mental and emotional distress.

-11-

The use of excessive force is itself an unlawful "seizure" under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004). In deciding whether challenged conduct constitutes excessive force, a court must determine the objective "reasonableness" of the challenged conduct, considering "'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight.'" *Carswell*, 381 F.3d at 240 (quoting *Graham*, 490 U.S. at 396). Other factors include "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). In evaluating reasonableness, the court must take into consideration the fact that "police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397. Thus, the court should not apply "the 20/20 vision of hindsight," but should instead consider the "perspective of a reasonable officer on the scene." *Id.* at 396.

The constitutional right in question is clearly established under the qualified immunity test. The factors relevant to the excessive force analysis are well-recognized, as described above. *See Sharrar*, 128 F.3d at 822; *Estate of Smith v. Marasco*, 430 F.3d 140, 150 (3d Cir. 2005); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1193 (3d Cir. 1995) (finding liability for excessive force where officers pointed guns at and handcuffed several members of a family where there was "simply no evidence of anything that should have caused the officers to use the kind of force they are alleged to have used"); *Robinson v. Solano County*, 278 F.3d 1007, 1015 (9th Cir. 2002) (en

banc ) (finding the law sufficiently established in 2002 to recognize the "general principle that pointing a gun to the head of an apparently unarmed suspect during an investigation" can constitute excessive force, "especially where the individual poses no particular danger").

White alleges that the officers handcuffed her and pointed a gun at her head. She was not was arrested nor was she the subject of the investigation. At this stage of the proceedings, there is insufficient information before the court to make a determination of whether the alleged use of force was reasonable and whether the defendants are entitled to qualified immunity. Therefore, the court will deny the motion to dismiss as to this issue. The plaintiffs moved for summary judgment on the gun issue. The court will deny as premature that portion of their motion, with leave to White to renew following service of Officer Mailey.

## C. Motions for Summary Judgment

The plaintiffs claim that on September 21, 2005, Marzec, Jacobs, and Quaglino conducted a search using an illegal search warrant. Weatherspoon alleges that Marzec, Jacobs, and Quaglino acted unreasonably when they failed to "knock and announce" their presence prior to the search. Hickman claims that all items seized were improperly turned over to the DEA because the DEA was not prosecuting him. Marzec and Jacobs move for summary judgment against Hickman on the basis that: 1) the warrant was valid, 2) even if it was not, they have qualified immunity, and 3) during the relevant time period, the property in question was in the possession of the DEA the entire time. (Consolidated Civ. No. 05-811-GMS, D.I. 15.) Marzec, Jacobs, and Quaglino further move for summary judgment against White and Weatherspoon for the same reasons and on the additional issue that they did not act unreasonably by failing to

-13-

knock and announce. (Civ. No. 06-008-GMS, D.I. 14, 15; Civ. No. 06-009-GMS, D.I. 14, 15.)[7] Hickman, Weatherspoon, and White move for summary judgment against Delmar, Marzec, Jacobs, and Quaglino on the basis that there exists no genuine issue of material fact and, therefore, they are entitled to summary judgment on the issues of municipality liability and an invalid search warrant. (Consolidated Civ. No. 05-811-GMS, D.I. 52.)

### 1. Standard of Review

The court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). However, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v.*

---

[7] The court will not address the motions to dismiss on this issue, but will rule on the alternative motions for summary judgment.

*Catrett*, 477 U.S. 317, 325 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, the plaintiffs cannot rely merely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in their favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### 2. Relevant Facts

Marzec has been a detective with the Delmar, Delaware Police Department since 1994. (Consolidated Civ. No. 05-811-GMS, D.I. 16, ex. C.) From 1997 to date, Marzec has been a designated task force officer with the federal DEA. (*Id.*) The plaintiffs allege that Marzec used an invalid search warrant to seize cash, a Dodge Durango, numerous receipts and records, and his cell phone. The plaintiffs posit that the search warrant was invalid because it was for a residence in Ellendale, Delaware, but the property in question is in Lincoln, Delaware; and the warrant was for a single wide tan and white mobile home, but the property in question was a brown double-wide. Lincoln and Ellendale are neighboring towns in Sussex County, Delaware, approximately four miles apart.

The search warrant was issued for the premises known/located at 9008 Greentop Road, Ellendale, Sussex County, Delaware, and described it as a trailer located on the west side of Greentop Road, beige/tan with white trim and white foundation, white front door with the numbers 9008 to the right side of the front door. (Consolidated Civ. No. 05-811-GMS, D.I. 16, ex. B.) The search warrant included "any and all persons present." (*Id.*) The affidavit in support of the search warrant indicated that property to be seized included "books, records, receipt, notes,

ledgers and other papers relating to the transportation, ordering, purchase and distribution of controlled substances, in particular, cocaine, marijuana and other controlled dangerous substances." (*Id.*) The application states that Hickman was selling cocaine from his residence on Greentop Road and that he had moved into a double-wide trailer located at the same location. (*Id.*)

Marzec conducted surveillance of a trailer located at 9008 Greentop Road in Sussex County, Delaware. (*Id.* at ex. C.) He observed Hickman and Weatherspoon enter and leave the trailer on numerous occasions and believed that they resided there. (*Id.*) In connection with his investigation of Hickman, Marzec signed an affidavit in support of a search warrant located at 9008 Greentop Road, Ellendale, Sussex County, Delaware. (*Id.*) The probable cause section of the application for the search warrant relied upon information received from several law enforcement agencies, a confidential source, Marzec's investigation, and surveillance conducted throughout the months of June and July 2005. (*Id.*)

In preparation of the search warrant, Marzec entered Hickman's and Weatherspoon's name into a computer system to determine their address. (*Id.*) The search result indicated that Hickman lived at an address that Marzec knew was not the 9008 Greentop Road location and that Weatherspoon lived at a rural route address in Ellendale, Delaware. (*Id.*) According to Marzec, because Delaware had stopped using rural route addresses for addresses in Sussex County and had replaced the addresses with street names, he had no reason to believe that the search was wrong when it indicated that Weatherspoon lived in Ellendale, Delaware. (*Id.*) Weatherspoon's driver's license, issued April 1, 2005, lists her address as 9008 Greentop Rd., Lincoln, Delaware. (Civ. No. 06-009, D.I. 24, ex. B.) An investigative report prepared by Mailey, not Marzec, refers

-16-

to Hickman's home on Greentop Road in Lincoln, Delaware. (Consolidated Civ. No. 05-811-GMS, D.I. 18, ex. A-1.)

When Marzec executed the search warrant he was accompanied by Jacobs, a special agent with the DEA, Quaglino, an agent with the DEA, the Ellendale Police Chief, and others. (*Id.* at exs. C, D; Civ. No. 06-008-GMS, ex B, pt. 2 ex. D.) Jacobs had no reason to believe the search warrant was incorrect when it stated that Hickman lived in Ellendale, Delaware. (Consolidated Civ. No. 05-811-GMS, D.I. 16, ex. D.)

Marzec, Jacobs, and Quaglino all wore clothing that displayed either "Police" or "DEA" when the search warrant was executed. (Civ. No. 06-008-GMS, ex B, pt. 2 ex. D.) Hickman was standing outside the residence with unidentified individuals upon their arrival at the trailer in question. (*Id.*) Marzec, Jacobs, and Quaglino identified themselves as police officers and advised Hickman they intended to execute a search warrant for the residence. (*Id.*) Two females, White and Weatherspoon then exited the trailer and, again, Marzec, Jacobs, and Quaglino identified themselves as police officers and advised the females they intended to execute a search warrant for the residence. (*Id.*) Marzec, Jacobs, and Quaglino entered the trailer through an unlocked door. (*Id.*) There was no forced entry of the residence. (*Id.*) Hickman, White, and Weatherspoon were detained during the search of the trailer. (*Id.*) According to Marzec, the law enforcement officers had their guns drawn when they entered the trailer, but at no time did they point guns at White or Weatherspoon. (*Id.*)

The affidavit in support of the search warrant refers to a double-wide trailer on Greentop Road. The plaintiffs submitted a photograph of what appears to be a single-wide trailer, brown, beige, or tan with a white door and foundation as well as a photograph of a double-wide trailer,

-17-

brown, beige or tan with a white door, and white foundation. The photograph of the double-wide trailer has the number 9008 to the right side of the front door as described by the search warrant. The photograph of the single-wide trailer does not have a house number. The plaintiffs did not identify the photographs submitted. (Consolidated Civ. No. 05-811-GMS, D.I. 20.)

### 3. Qualified Immunity

The assessment of qualified immunity normally involves two steps. The court must assess whether the facts alleged, viewed in the light most favorable to the party asserting the injury, demonstrate that the alleged conduct violated a constitutional right. *Egolf v. Witmer*, 526 F.3d 104, 109 (3d Cir. 2008). Where a constitutional violation exists, the court moves to a second tier of analysis to determine whether the violated right was "clearly established." *Id.* (citing *Saucier v. Katz,* 533 U.S. 194, 200 (2001); *Gilles v. Davis,* 427 F.3d 197, 203 (3d Cir. 2005).

Under certain circumstances, government officials are protected from *Bivens* and § 1983 suits by qualified immunity. In the context of Fourth Amendment claims, qualified immunity operates to "protect officers from the sometimes 'hazy border between excessive and acceptable force,' and to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206 (2001) (quoting *Priester v. Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000) (internal citation omitted)). In considering whether qualified immunity applies, a court must first decide whether the facts, taken in the light most favorable to the plaintiff, demonstrate a constitutional violation. *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002) (citing *Saucier*, 533 U.S. at 201). If so, the court next determines whether the constitutional right in question was clearly established. *Id.* at 277 (citing *Saucier,* 533 U.S. at

-18-

201). "The relevant, dispositive inquiry in determining whether a right is clearly established is
whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he
confronted." *Saucier*, 533 U.S. at 202. "If the officer's mistake as to what the law requires is
reasonable," the officer is entitled to qualified immunity. *Id.* at 205; *Couden v. Duffy*, 446 F.3d
483, 492 (3d Cir. 2006). A qualified immunity analysis "gives ample room for mistaken
judgments by protecting all but the plainly incompetent or those who knowingly violate the law."
*Gilles*, 427 F.3d at 203.

## 4. Search Warrant

The plaintiffs argue that the search warrant is invalid on its face because it contains an
incorrect city, does not refer to a double-wide trailer, and the residence in question is not
tan/beige with white trim as described in the search warrant. They also argue that there was no
probable cause to issue the warrant. Marzec, Jacobs, and Quaglino argue that the search warrant
at issue was valid, but even if it was not, they nonetheless are entitled to qualified immunity
because they reasonably believed that it was valid. The plaintiffs argue that Marzec, Jacobs, and
Quaglino are not entitled to qualified immunity because they did not act in good faith and
violated clearly established constitutional rights when they conducted a search with an invalid
search warrant, and the search did not result in the filing of new federal or state criminal charges.

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause,
supported by Oath or affirmation, and particularly describing the place to be searched, and the
persons or things to be seized". The particularity-of-description requirement is satisfied where
"the description is such that the officer with a search warrant can, with reasonable effort,
ascertain and identify the place intended." *Maryland v. Garrison*, 480 U.S. 79, 91 (1987)

-19-

(quoting *Steele v. United States,* 267 U.S. 498, 503 (1925)); *United States v. Bedford,* 519 F.2d 650, 655 (3d Cir. 1975).

In deciding the sufficiency of the description of premises in a search warrant the court considers "whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." *United States v. Gitcho,* 601 F.2d 369, 371 (8th Cir. 1979). An incorrect street address is not necessarily fatal. *United States v. Ridinger,* 805 F.2d 818, 820 (8th Cir. 1986); *United States v. McCain,* 677 F.2d 657, 660-61 (8th Cir. 1982).

It is undisputed that the address on the search warrant contained the incorrect city for the premises searched – Ellendale, Delaware instead of Lincoln, Delaware. However, the search warrant contained the correct street address, county, and state. Moreover, the residence is in a rural location, and Ellendale, Delaware and Lincoln, Delaware are only approximately four miles apart. Notably, Marzec, who applied for the search warrant, had conducted surveillance at the location. While he was unsure of the correct city, after conducting a computer search he concluded that it was Ellendale, Delaware. Marzec was one of the officers who executed the warrant.

Considering that Marzec prepared the warrant and was one of the officers who executed the warrant, there was no confusion concerning which property was to be searched. *United States v. Hutchings,* 127 F.3d 1255, 1259 (10th Cir. 1997). Under these circumstances, the errors on the face of the warrant did not invalidate it or require discontinuance of the search. *See, e.g., United States v. Valentine,* 984 F.2d 906, 908-9 (8th Cir. 1993) (upholding search of building

-20-

mistakenly identified in warrant where executing officers had observed it for several days); *United States v. Bonner*, 808 F.2d 864, 866-67 (1st Cir. 1986) ("technical omission" in warrant did not invalidate search where officers had previously conducted surveillance and knew exactly what house was to be searched).

Moreover, the court finds specious the plaintiffs' position that the residence is not accurately described. The plaintiffs make much ado over the difference between a trailer and a double-wide. They allege that the search warrant was for a single-wide tan and white mobile home, but the residence in Lincoln is a double-wide, brown in color. (Civ. No. 06-008-GMS, D.I. 25.) Contrary to the plaintiffs' position, the search warrant does not describe the property as a single-wide mobile home. Rather, the warrant simply describes the property as a trailer. However, annexed to the search warrant, and something ignored by the plaintiffs, is the affidavit and application describing the Hickman's residence as located on Greentop Road in a double-wide trailer. (Consolidated Civ. No. 05-811-GMS, D.I. 16, ex. B, ¶ 12.)

Equally disingenuous is the plaintiff's argument over the color of the residence. The search warrant described the premises as beige/tan with white trim, a white foundation, white front door and the numbers "9008" to the right side of the front door. The plaintiffs argue that the residence is not tan with white trim, and allege in the consolidated complaints that it is brown, but in their motion for summary judgment do not suggest what is the actual color of the residence. (*Id.* at D.I. 18.) There are a wide range of colors that may be called brown, including but not limited to brown, tan, beige, khaki, bisque, walnut, or wheat, all dependent on the perception of the person describing the color. The plaintiffs submitted photographs in support of their position that the color description is incorrect. In this judge's view, the colors depicted in

-21-

the photographs of a single-wide trailer and a double-wide trailer could easily be described as tan, beige, or brown.

Finally, although not identified by the plaintiffs, they submitted a photograph of a double-wide trailer, presumably the residence searched on September 21, 2005. The search warrant adequately describes the double-wide trailer depicted in the photograph submitted by the plaintiffs. As discussed above, the photograph depicts the color of the premises as tan, beige, or brown; it depicts a residence with white trim, a white foundation, a white front door, and as described in the search warrant, the number "9008" can been seen to the right side of the front door. It is evident from the foregoing that, even with the incorrect city name, the search warrant in question described the residence to be searched with sufficient particularity such that the officer with a search warrant could, with reasonable effort, ascertain and identify the place to be searched.

Moreover, even if the warrant was invalid on its face, Marzec is entitled to qualified immunity. He knew the address for the trailer in question was 908 Greentop Road, Sussex County, Delaware. When preparing the application, he conducted a computer search of Weatherspoon's and Hickman's names to determine their listed address. His search indicated that Weatherspoon lived at a rural route address in Ellendale, Delaware. Marzec was aware that Delaware stopped using rural route addresses in Sussex County and that it now used street names. Hence, he had no reason to believe the computer was incorrect or that the search warrant could be invalid. Similarly, Jacobs had no reason to believe that the search was incorrect when it stated that Hickman lived in Ellendale, Delaware.

-22-

The plaintiffs further argue that there was no probable cause to support the search warrant. They contend that Marzec acted on a hunch, and without probable cause in seeking the search warrant. Marzec and Jacobs respond that the plaintiffs do not identify which statements of the search warrant are false and that they are entitled to qualified immunity because the search warrant is not so lacking in indicia of probable cause as to render official belief in its existence unreasonable.

An officer's affidavit supporting a search warrant is presumptively valid. *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978). "In the ordinary case, an officer cannot be expected to question [a] probable-cause determination. . . . [O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." *United States v. Leon*, 468 U.S. 897, 921 (1984) (citation omitted). Furthermore, the fact that a judge signed the warrant entitles Marzec, Jacobs, and Quaglino to a presumption of reasonableness that can only be overcome by "allegations of deliberate falsehood or of reckless disregard for the truth," which must be accompanied by specific proof. *Franks*, 438 U.S. at 171 (1978). "Only where the warrant application is 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable [ ]' will the officer lose the shield of immunity." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir.1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The plaintiffs fail to offer any proof of deliberate falsehood by Marzec. Moreover, the affidavit and application setting forth probable cause states that on numerous occasions Marzec conducted surveillance of a trailer located at 9008 Greentop Road in Sussex County, Delaware. During his surveillance, he observed Hickman and Weatherspoon at the address and believed that

-23-

they resided there. He also relied upon information received from several law enforcement agencies, a confidential source, his investigation, and surveillance.

Marzec was intimately involved in the investigation of Hickman, and based upon the information gathered, it was reasonable for him to believe there was probable cause for issuance of a search warrant. Indeed, it seems the judicial officer who issued the search warrant agreed with Marzec. Additionally, reasonable officers in Marzec, Jacobs, and Quaglino's positions would have believed they had probable cause to search the premises identified on the search warrant, and at the very least, that it would not have been clear to a reasonable officer that probable cause was lacking. As such, plaintiffs' motion for summary judgment will be denied and Marzec, Jacobs, and Quaglino motions for summary judgment will be granted on this issue as they are entitled to qualified immunity.

### 5. Knock and Announce

Weatherspoon alleges that at the time of the search Marzec, Jacobs, and Quaglino did not identify themselves, tell her she was under arrest, or knock and announce their presence prior to entering the premises. (Civ. No. 06-009-GMS, D.I. 2.) Marzec, Jacobs, and Quaglino argue that the knock and announce rule only applies in forcible situations. They contend that even if they did not formally knock and announce before searching the trailer at issue, said failure is protected by qualified immunity and, therefore, they are entitled to summary judgment on White and Weatherspoon's claims.

Only Weatherspoon alleges failure to knock and announce. She responds that the named defendants entered the premises by force, with their guns drawn, and neither asked permission to enter nor was given permission to enter. (Civ. No. 06-009-GMS, D.I. 19.) Inasmuch as White

-24-

did not allege a failure to knock and announce, the court will grant the motion for summary judgment for any such claims.

The common-law requirement that police officers entering a dwelling must knock on the door and announce their identity and purpose before entry is incorporated into the guarantees of the Fourth Amendment. *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995). The rule requires police first to knock on the door and announce their purpose and identity before attempting a forcible entry of a dwelling. *See Kornegay v. Cottingham,* 120 F.3d 392, 396 (3d Cir. 1997). It is not to be rigidly applied, however, and "it is the duty of a court . . . to determine whether the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement." *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997).

The "knock and announce" requirement may be dispensed with in certain situations. *See Richards v. Wisconsin*, 520 U.S. 385, 394 (1997) (noting that there is no *per se* exception to the knock and announce rule in felony drug cases); *Kornegay v. Kottingham*, 120 F.3d 392, 397 (3d Cir.1997) (stating that the knock and announce rule can be dispensed with in certain situations). These include: (1) when the individual inside was aware of the officer's identity and therefore the announcement would be a useless gesture; (2) when announcement might lead to the suspect's escape; (3) when announcement might place the officers in physical peril; (4) when announcement might lead to the destruction of evidence. *See Richards*, 520 U.S. at 393; *Wilson*, 514 U.S. at 936; *Kornegay v. Cottingham*, 120 F.3d 392, 397 (3d Cir. 1997); *Bodine v. Warwick*, 72 F.3d 393, 397 (3d Cir. 1995); *United States v. Stiver*, 9 F.3d 298, 302 (3d Cir. 1993); *United States v. Kane*, 637 F.2d 974, 978 (3d Cir. 1981).

-25-

The court notes that, as to this issue, Weatherspoon presents only argument in her opposition. Weatherspoon, however, cannot rely merely on the unsupported allegations of her complaint. The undisputed facts before the court are that at the time the search warrant was executed, Marzec, Jacobs, and Quaglino wore clothing that displayed either "Police" or "DEA," thus indicating they were law enforcement officials. Upon their arrival at the residence in question, Marzec, Jacobs, and Quaglino identified themselves to Hickman who was standing outside the residence with unidentified individuals. At that time they informed Hickman they intended to execute a search warrant for the residence. White and Weatherspoon then exited the trailer and Marzec, Jacobs, and Quaglino again identified themselves as police officers and advised White and Weatherspoon they intended to execute a search warrant for the residence. All of this happened prior to the search. Marzec, Jacobs, and Quaglino entered the trailer through an unlocked door.

There was no need for Marzec, Jacobs, and Quaglino to knock and announce before conducting their search on September 21, 2005. They identified themselves as law enforcement officials to all the plaintiffs outside the entrance to the residence and prior to walking through an unlocked door. Hence, under the circumstances it was reasonable for them to dispense with the "knock and announce" requirement." It would have been a useless gesture for them to proceed with the "knock and announce" requirement based upon the undisputed facts before the court. For the foregoing reasons, the court will grant Marzec, Jacobs, and Quaglino's motion for summary judgment as to this issue.

### 6. Due Process

Marzec and Jacobs argue that they are entitled to summary judgment as to Hickman's claim that they improperly turned over his property to the DEA. They argue that the property was seized on behalf of the DEA and was in the DEA's possession the entire time.

The evidence before the court indicates that the search at issue took place under the auspices of a joint task force with the DEA. Marzec, who is employed by the Delmar Police Department is a designated task force officer with the DEA and Jacobs and Quaglino are DEA agents. The affidavit and application for the search warrant were prepared by Marzec as a detective/task force officer of the Delmar Police Department/U.S. Department of Justice DEA. In further support, the defendants' position is that the notices of seizure for the property at issue are on U.S. Department of Justice DEA forms. The forms state that the property was seized on September 21, 2005, by special agents of the DEA for forfeiture because the property was used or acquired as a result of a violation of the Controlled Substances Act. (Consolidated Civ. No. 05-811-GMS, D.I. 16, ex. A.)

Hickman's argument that his property was improperly turned over the DEA is not borne by the facts of record. There is no genuine issue of material fact and, therefore, the court will grant Marzec and Jacob's motion for summary judgment as to this issue.

### D. Motions for Joinder

Hickman and White move for permissive joinder of Officer Marvin Mailey ("Mailey") and the City of Dover ("Dover") pursuant to Fed. R. Civ. P. 20(a). (Consolidated Civ. No. 05-811-GMS, D.I. 32; (Civ. No. 06-008-GMS, D.I. 21). Mailey is employed as a police officer in Dover, Delaware, and according to the plaintiffs was present and participated in acts of

September 21, 2005. Hickman argues that Dover is responsible for Mailey's training, supervision, and authorization of duties.

The motions will be denied as moot. As discussed, all cases have been consolidated, and the amended complaint, found at D.I. 45 adds as defendants Marvin Mailey ("Mailey") and the City of Dover, Delaware ("Dover"). (Consolidated Civ. No. 05-811-GMS, D.I. 45.) Mailey has not been served, and therefore, the court will issue an order so that service may be effected on Mailey.

## III. CONCLUSION

Based upon the foregoing analysis, the court will grant Jacobs and Marzec's motion to dismiss or, in the alternative, motion for summary judgment against Hickman; will deny Hickman's motion for default; will grant Delmar's motions to dismiss; will deny as moot Hickman's motion for joinder; and will deny as premature Hickman, Weatherspoon and White's motion for summary judgment as to the use of force issue and deny their motion for summary judgment in all other respects. (Consolidated Civ. No. 05-811-GMS, D.I. 15, 25, 26, 32, 62, 70.) The court will deny Jacobs, Marzec, and Quaglino's motion to dismiss against White as to the use of force issue and grant in all other respects their motion to dismiss or, in the alternative, motion for summary judgment; and will deny as moot White's motion for joinder. (Civ. No. 06-008-GMS, D.I. 14, 21.) The court will grant Jacobs, Marzec and Quaglino's motion to dismiss or, in the alternative, motion for summary judgment against Weatherspoon. (Civ. No. 06-009-GMS, D.I. 14.) The court will dismiss, *sua sponte*, all claims raised against Dover. Finally, the court will enter a service order for the unserved defendant, Mailey. The only claim that will

-28-

remain is the use of force claim raised by White against Jacobs, Marzec, Quaglino, and Mailey.

An appropriate order will be entered.

CHIEF, UNITED STATES DISTRICT JUDGE

September 18, 2008
Wilmington, Delaware

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STEVE HICKMAN, TAWANDA ) WEATHERSPOON, and SANDRA ) J. WHITE, ) )        Plaintiffs, ) ) v. ) ) DETECTIVE MARZEC, in his ) individual and official capacity, ) TOWN OF DELMAR, AGENT ) TOM JACOBS, MARVIN ) MAILEY, and CITY OF DOVER, ) DELAWARE, ) )        Defendants. ) | CONSOLIDATED Civil Action No. 05-811-GMS Civil Action No. 05-839-GMS |
| SANDRA V. WHITE, ) )        Plaintiff, ) ) v. ) ) DETECTIVE MARZEC, AGENT ) TOM JACOBS, and AGENT ) CHRIS QUAGLINO, ) )        Defendants. ) | Civil Action No. 06-008-GMS |
| TWANDA WEATHERSPOON, ) )        Plaintiff, ) ) v. ) ) DETECTIVE MARZEC, AGENT ) TOM JACOBS, and AGENT ) CHRIS QUAGLINO, ) )        Defendants. ) | Civil Action No. 06-009-GMS |

**ORDER**

At Wilmington this 1⁴ th day of September, 2008, for the reasons set forth in the Memorandum issued this date

1. The motions to dismiss or, in the alternative, motions for summary judgment filed by the defendants Tom Jacobs ("Jacobs'), Detective Marzec ("Marzec"), and Chris Quaglino ("Quaglino") against Steve A. Hickman and Tawanda Weatherspoon are **GRANTED**. (Consolidated Civ. No. 05-811-GMS, D.I. 15; Civ. No. 06-009-GMS, D.I. 14.)

2. The motion to dismiss filed by Jacobs, Marzec, and Quaglino as to Sandra J. White's excessive force issue claim is **DENIED** and their motion to dismiss or, in the alternative, motion for summary judgment is **GRANTED** in all other respects. (Civ. No. 06-008-GMS, D.I. 14.)

3. The motion for summary judgment construed as a motion for default filed by the plaintiff Steve Hickman is **DENIED**. (Consolidated Civ. No. 05-811-GMS, D.I. 25.)

4. The motions to dismiss filed the City of Delmar are **GRANTED** and it is dismissed from the case. (Consolidated Civ. No. 05-811-GMS, D.I. 26, 70.)

5. The plaintiffs' motions for joinder are **DENIED** as **moot**. (Consolidated Civ. No. 05-811-GMS, D. I. 32; Civ. No. 06-008-GMS, D.I. 21.)

6. The plaintiffs' motion for summary judgment as to the use of force issue is **DENIED** as premature with leave to renew following service of Marvin Mailey, and the remainder of the motion for summary judgment is **DENIED** in all other respects. (D.I. 62.)

7. The claims against the defendant City of Dover are dismissed *sua sponte* for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and it is dismissed from the case.

-2-

8. The only claim that remains is that of the plaintiff Sandra J. White against the defendants Tom Jacobs, Detective Marzec, Agent Chris Quaglino, and Office Marvin Mailey alleging excessive force by pointing a gun at White's face at the time the search warrant was executed.

IT IS FURTHER ORDERED that:

1. The clerk of the court shall cause a copy of this order to be mailed to the plaintiffs.

2. Marvin Mailey has not been served. Accordingly, pursuant to Fed. R. Civ. P. 4(c)(2) and (d)(2), Sandra J. White shall complete and return to the clerk of the court an **original** "U.S. Marshal-285" form for the defendant **Marvin Mailey**, as well as for the **Chief Executive Officer for the City of Dover, Delaware.** Additionally, White shall provide the copies of the complaints and amendments filed in the consolidated cases as follows: Civ. No. 05-811-GMS (D.I. 2, 45); Civ. No. 05-839-GMS (D.I. 2, 8); Civ. No. 06-008-GMS (D.I. 2, 25); Civ. No. 06-009-GMS (D.I. 2) for service upon Marvin Mailey and the Chief Executive Office for the City of Dover, Delaware. **Furthermore, White is notified that the United States Marshal will not serve the complaints and amendments until the required "U.S. Marshal 285" forms have been received by the clerk of the court. Failure to provide the required complaints, amendments, and the "U.S. Marshal 285" forms for Marvin Mailey and the chief executive officer for the City of Dover within 120 days of this order may result in the complaint being dismissed or defendants being dismissed pursuant to Federal Rule of Civil Procedure 4(m).**

3. Upon receipt of the completed "U.S. Marshal 285" form(s) and copies of the complaint, the United States Marshal shall serve a copy of the complaints and amendments, the

-3-

Memorandum issued this date, and this Order upon the defendants as directed by White. All costs of service shall be advanced by the United States.

4. No communication, including pleadings, briefs, statement of position, etc., will be considered by the court in this civil action unless the documents reflect proof of service upon the parties or their counsel.

CHIEF, UNITED STATES DISTRICT JUDGE

-4-