IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SANDRA J. WHITE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CONSOLIDATED |
| v. ) | Civil Action No. 05-811-GMS |
| ) | Civil Action No. 05-839-GMS |
| DETECTIVE MARZEC, in his ) | Civil Action No. 06-008-GMS |
| individual and official capacity, ) | Civil Action No. 06-009-GMS |
| AGENT TOM JACOBS, ) | |
| MARVIN MAILEY, and ) | |
| CHRIS QUAGLINO, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**

## I. INTRODUCTION

The plaintiff, Sandra White ("White"), one of three plaintiffs, filed four separate civil rights actions. As a result of an order entered July 24, 2006 (Civ. No. 05-811-GMS, D.I. 40), the four actions were consolidated with Civ. No. 05-811-GMS serving as the lead consolidated case number. During the course of the litigation, two plaintiffs, three defendants, and several claims have been dismissed. (*See* D.I. 5, 76.) The only claim that remains is White's use of force claim against the defendants Tom Jacobs ("Jacobs"), Ronald Marzec ("Marzec"), Chris Quaglino ("Quaglino"), and Marvin Mailey ("Mailey"). Pending before the court are two motions, including a motion for summary judgment filed by Marzec, Jacobs, and Quaglino and a motion to dismiss filed by Mailey. (D.I. 80, 82.) White did not respond to the motions.

## II. BACKGROUND

White proceeds *pro se* and has been leave to proceed *in forma pauperis*. The lawsuit arises out of a series of events occurring on September 21, 2005, as set forth in previous court

orders. *See Hickman v. Marzec*, Civ. No. 05-811-GMS; *Hickman v. Marzec*, Civ. No. 05-839-GMS; *White v. Marzec*, Civ. No. 06-008-GMS; *Weatherspoon v. Marzec*, Civ. No. 06-009-GMS. With regard to the remaining claim, White alleges that on September 21, 2005, Marzec, a task force officer with the Drug Enforcement Administration ("DEA"), Jacobs, a DEA special agent, and Quaglino, the resident agent in charge of the Dover, Delaware, DEA office, violated her constitutional rights while executing a search warrant at the house of her daughter, Tawanda Weatherspoon ("Weatherspoon"). White alleges that during the search the defendants approached her and, without identifying themselves as police officers, pointed a gun at her, patted her down, and handcuffed her, even though she was not under arrest. (Civ. No. No. 05-008, D.I. 2.) The amended complaint, filed July 17, 2006, added DEA task force officer Mailey, among other dismissed defendants. (*Id.* at D.I. 25.) It alleges that White "was handcuffed and [had a] gun pointed in her face" and that Mailey "was the main culprit of this violation because [h]e made initial contact with [her] and created the abuse . . . ." (*Id.*) The court dismissed White's claim that the officers acted unreasonably when they handcuffed her. The sole remaining claim is that the defendant officers used excessive force when they allegedly pointed a gun at White's head.

Law enforcement officers were conducting a drug dealing criminal investigation, and applied for, and received, a search warrant for the residence of Steve Hickman ("Hickman"). Marzec, Jacobs, Quaglino, and others executed the warrant on September 21, 2005. (D.I. 81, ex. A.) There were seven adults, five children, and one pit bull present at the Hickman residence

when the officers arrived to execute the search warrant.[1] (*Id.* at ex. B22-25.) White and another individual were outside and in front of the residence walking towards a van parked in the driveway. (*Id.* at B25-26.) Hickman and the three males were outside in the back of the residence by some sheds. (*Id.* at B25.) Weatherspoon and the children were inside. (*Id.* at B25-26.)

It was daylight when the officers arrived to execute the search warrant; sometime after 3 p.m. (*Id.* at B26.) During her deposition, White testified that as she and Hinton were walking towards the van, an SUV drove towards the back of the residence and Marzec jumped from the vehicle with his gun drawn. (*Id.* at B28, 30, 71.) Marzec ran to the back of the residence, while White was "just about" in front of the house. (*Id.* at B30, 72.) Marzec was some distance from White. (*Id.* at B30.) Marzec wore a vest with DEA printed on the back although White did not notice it at the time. (*Id.* at B29.) She saw other officers running past her towards the back of the residence. (*Id.* at B32, 72-73.) Everything "happen[ed] really quickly." (*Id.* at B72-73.)

Mailey approached White and Hinton with his gun drawn. (*Id.* at B31, 72.) When Mailey confronted White, all the other officers "were running to the back." (*Id.* at B73.) White testified that Mailey had his gun pointed towards her "face area" and twice told her to put her hands up. (*Id.* at B31, 34.) White raised her hands after the second order. (*Id.* at B33.) Mailey asked White if she had anything on her and she answered that she did not have any drugs or weapons. (*Id.* at B32.) Mailey put his gun away, went behind White, and handcuffed her. (*Id.* B35-36.) Next, Mailey patted her down and walked her to the back of the residence. (*Id.* at B36-

---

[1] The adults included Hickman, Weatherspoon, White, White's daughter Denise Hinton ("Hinton"), and three male friends of Hickman.

37.) No guns were pointed at her once she was handcuffed. (*Id.* at B56.) White's interaction with Mailey was "pretty quick." (*Id.* at B73.) She could not state exactly how long the gun was pointed at her, but stated that after seeing the gun, she "paused for a few seconds," Mailey immediately put his gun away, and handcuffed her. (*Id.* at B55.) She was not verbally threatened. (*Id.* at B44.) White estimates that she remained handcuffed between fifteen and thirty minutes while the search warrant was executed." (*Id.* at B47, 54.) She later testified that Mailey unhandcuffed her after about fifteen minutes and gave her permission to leave with the children. (*Id.* at B51, 53-55.)

White testified that she had no interaction with Marzec. (*Id.* B73) She does not know Jacobs and Quaglino, and did not know if they were present on September 21, 2005, or what they were doing. (*Id.* at B69.) She does not know why she sued Marzec, Jacobs, and Quaglino. (*Id.* at B70.)

## III. DISCUSSION

### A. Motion to Dismiss

Mailey moves for dismissal pursuant to Fed. R. Civ. P. 4(m) and 12(b)(2) on the grounds that he was not served within 120 days as required by a September 18, 2008 order. (D.I. 82, 83.) As of September 18, 2008, Mailey had not been served and, therefore, the court issued a service order. (*See* D.I. 76.) The September 18, 2008 order required White to submit complete, original USM-285 Marshal service forms for Mailey and the chief executive office of Dover, Delaware, as well as copies of the consolidated complaints and amendments within 120 days from the date of the order. White was warned that failure to comply with the order could result in Mailey's dismissal or dismissal of the complaint. She did not comply with the order.

"It is fundamental that before a court may impose upon a defendant a personal liability or obligation in favor of the plaintiff or may extinguish a personal right of the defendant it must have first obtained jurisdiction over the person of the defendant." *Ayers v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 569 (3d Cir. 1996) (quotations omitted). Rule 4(m) provides that "[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court . . . shall dismiss the action without prejudice . . . provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).

The court ordered White to take steps to effect service on Mailey. When Mailey filed the instant motion to dismiss, White was placed on notice by Mailey that he had not been timely served yet she did not ask for help from the court or seek an extension of time to effect service. Indeed, she took no action. For the foregoing reasons, the court finds that White has failed to show good cause for her failure to serve Mailey, and will grant his motion to dismiss. *See Miles v. Aramark Corr. Serv. at Curran Fromhold Corr.*, 236 F. App'x 746 (3d Cir. 2007), *cert. denied*, 552 U.S. 1320 (2008) (not published) (no abuse of discretion by district court in dismissing complaint when the named defendants were not timely served, the matter was brought to plaintiff's attention, and plaintiff did not request an extension of time to effect service or otherwise show good cause for the failure to serve).

### B. Summary Judgment

#### 1. Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). The facts must be viewed in the light most favorable to the nonmoving party and all reasonable inferences from the evidence must be drawn in that parties' favor. *Conopco, Inc. v. United States*, 572 F.3d 162, 165 (3d Cir. 2009). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). If the court determines that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law, summary judgment is appropriate. *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005).

White did not file a response to the motion for summary judgment. The court, however, will not grant the entry of summary judgment without considering the merits of the unopposed motion. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (holding that a district court should not have granted summary judgment solely on the basis that a motion for summary judgment was not opposed.").

### 2. Personal Involvement

Marzec, Jacobs, and Quaglino move for summary judgment on the grounds that they lacked sufficient personal involvement to impose liability against them. Initially the court notes

that, with respect to federal defendants, allegations of constitutional violations under color of federal law are properly brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement can be shown through allegations that a defendant directed, had actual knowledge of, or acquiesced in, the deprivation of a plaintiff's constitutional rights. *Id.; see Monell v. Department of Social Services*, 436 U.S. 658, 694-95 (1978).

White testified that when the officers arrived at the Hickman residence, Marzec was driving an SUV, stopped, and jumped from the vehicle with his gun drawn. He ran to the back of the house towards the shed and was some distance from White. She had no interaction with him and he was not the officer who approached her. White does not know Jacobs and Quaglino, if they were present or what they were doing on September 21, 2005. Indeed, White testified that Mailey was the only officer who approached her and who pointed a gun at her. Once she was handcuffed, the gun was withdrawn and no other officers pointed a gun at her.

It is undisputed that Marzec, Jacobs, and Quaglino had no personal involvement in the alleged use of force. Moreover, there is no evidence that they directed, had actual knowledge of, or acquiesced in, the use of force. It is evident in reading White's testimony that Marzec, Jacobs, and Quaglino did not violate her constitutional rights and no reasonable jury could conclude that

a constitutional violation occurred.[2] Therefore court will grant their motion for summary judgment.

## IV. CONCLUSION

For the above reasons, the court will grant Mailey's motion to dismiss and Marzec, Jacobs, and Quaglino's motion for summary judgment. (D.I. 80, 82.)

An appropriate order will be entered.

CHIEF, UNITED STATES DISTRICT JUDGE

August 11, 2010
Wilmington, Delaware

---

[2] The defendants also address a "poor training and supervision" claim. With the exception of White's use of force claim, the court dismissed all claims, including improper training and supervision and, therefore, sees no need to address the claim. (*See* D.I. 76.)

-8-

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SANDRA J. WHITE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CONSOLIDATED |
| v. ) | Civil Action No. 05-811-GMS |
| ) | Civil Action No. 05-839-GMS |
| DETECTIVE MARZEC, in his ) | Civil Action No. 06-008-GMS |
| individual and official capacity, ) | Civil Action No. 06-009-GMS |
| AGENT TOM JACOBS, ) | |
| MARVIN MAILEY, and ) | |
| CHRIS QUAGLINO, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

At Wilmington this __11__ day of August, 2010, for the reasons set forth in the Memorandum issued this date

1. The motion for summary judgment filed by the defendants Tom Jacobs, Ronald Marzec, and Chris Quaglino is **granted**. (D.I. 80.)

2. The motion to dismiss filed by the defendant Marvin Mailey is **granted**. (D.I. 82.)

3. The Clerk of Court is enter judgement favor of the defendants and against the plaintiff and to **close** the case.

_____
CHIEF, UNITED STATES DISTRICT JUDGE